James Whittaker **TAFT**, Plaintiff,

v.

**UNITED STATES of America, Charles J. Cole and Thomas L. Doud, Defendants.**

No. 2:92–CV–377.

United States District Court, D. Vermont.

June 4, 1993.

Christina C. Schulz, Sheehey, Brue, Gray & Furlong, Burlington, VT, for plaintiff.

James J. Gelber, Asst. U.S. Atty., Burlington, VT, for defendants.

## OPINION AND ORDER

PARKER, Chief Judge.

On August 23, 1990, the Drug Enforcement Administration ("DEA") seized a 1987

Toyota half ton pickup truck which was titled in the name of James W. Taft ("Taft"), plaintiff. The vehicle was later forfeited under federal forfeiture laws on November 27, 1990. Plaintiff has sued the United States and two individual federal officers alleging deprivation of property in violation of his constitutional rights. His suit is a collateral attack on a completed administrative forfeiture proceeding by way of a civil action.

In his original complaint, filed December 11, 1992, Taft filed suit only against the Government seeking declaratory, injunctive, and compensatory relief. Faced with a motion to dismiss on jurisdictional grounds, plaintiff moved for leave to amend his complaint. The Government did not oppose the amendments and the Court has granted the motion for leave to amend. ·

The amended complaint ("the Complaint") sets forth the following claims: (1) the Government's notice of seizure and forfeiture was inadequate and violated Taft's due process rights under the Fifth Amendment; (2) the Government's seizure of Taft's truck was illegal under the Fourth Amendment; and (3) the individual federal officers violated Taft's Fourth and Fifth Amendment rights in seizing his truck and are liable to him under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Taft requests that the Court issue a judgment declaring that he is entitled to his truck free and clear of any governmental claim, right or interest. In addition, Taft seeks injunctive relief requiring the Government to return his truck to him or in the alternative, to forward to him all proceeds from the sale of his truck. Finally, Taft seeks compensatory damages from the individual federal defendants. In essence then, Taft seeks to set aside the Government's forfeiture of his truck, to have his vehicle returned to him, and to collect money damages for conduct which violated his constitutional rights.

■ Before the Court is the Government's motion to dismiss, or in the alternative, for summary judgment, which addresses only the relief sought against the Sovereign.[1] The parties have submitted numerous affidavits and other exhibits in their filings related to this motion. For purposes of the Government's defenses under Federal Rule of Civil Procedure 12(b)(1), lack of subject matter jurisdiction, the motion is not converted to one for summary judgment. *See Land v. Dollar,* 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Exchange Nat'l Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126, 1130 (2d Cir.1976). That portion of the Government's motion directed to the merits of the plaintiff's claims will be treated as if it were a motion for summary judgment. Fed. R.Civ.P. 12(b).

*Factual Background*

On August 23, 1990, DEA agents Charles Cole and Thomas Doud arrested Taft in Montgomery, Vermont for illegally cultivating marijuana. Cole and Doud had seen Taft and another individual, Steven Whittaker, drive from Stowe, Vermont to Montgomery, where the marijuana was being cultivated. Taft and Whittaker made the trip in Taft's 1987 Toyota half ton pickup truck. The truck was seized without a warrant at the time of Taft's arrest and the DEA later determined that probable cause existed to forfeit the truck. Taft held title to the truck free and clear of any liens at that time. At some point thereafter the Government also seized Taft's real property in Stowe, Vermont.

During the post-arrest processing on that same day, Taft listed his address as R.D. # 2, Box 3120, Stowe, Vermont. That was also the address on the truck's title and registration papers. However, beginning in early September, 1990 and up until November 22, 1990, Taft resided with his mother in Cincinnati, Ohio. The United States Probation Office and the United States Attorney's Office were aware of Taft's whereabouts during those months. At the bail hearing on August 28, 1990, the Government was informed that Taft planned to work in Ohio and Maine

---

1. The Government asserts no arguments on behalf of the individual defendants in this action because those defendants have not yet been served with the amended Complaint. The Government requests 60 days to respond once service has been effected. (*See* Paper 20 at 7 n. 2).

pending the resolution of the criminal charges against him.

The Government filed an affidavit of DEA Agent Cole which states that Cole told Taft at the time of his arrest that his correct address was needed so that DEA could send him a notice of seizure and that an administrative forfeiture would be commenced. He further stated that he told Taft that Taft would have an *opportunity to petition DEA* for the return of his truck or judicially contest the forfeiture. Both Taft and his companion, Steven Whittaker, deny that this conversation occurred. Agent Cole also stated that at some point between Taft's arrest and his trial in July, 1991, Cole spoke directly with Jeffrey Behm, Taft's attorney, and informed him of the status of the forfeiture proceedings against the truck. Behm denies that this conversation ever occurred.

On August 24, 1990, the day after his arrest, Taft was represented by a court-appointed attorney at his Initial Appearance in connection with the criminal charges. By mid-September, 1990, however, Taft was being represented by Behm. On behalf of his client, Behm contacted Assistant U.S. Attorney Jim Gelber to determine whether Taft could return to his Stowe property which had been seized. Behm and Gelber spoke on three occasions between September 17 and September 25, 1990 regarding this matter. During the course of these conversations Gelber was apprised of the fact that Taft was not then residing at the Stowe address.

DEA Agent Sigmund Wutkiewicz, who participated in the arrest and post-arrest processing of Taft, prepared the paperwork for processing the seizure of Taft's truck between August 23 and August 31, 1990. Agent Wutkiewicz's Affidavit states that he was unaware of the fact that Taft did not reside at the Stowe address during any period after his arrest. On October 9, 1990, DEA prepared its Notice of Seizure for Taft's pickup truck. DEA sent this Notice of Seizure to Taft at his Stowe address by certified mail with a receipt requested. The U.S. Postal Service in Stowe sent two notices of the certified letter to Taft at the Stowe address. The first notice was sent October 15, 1990, and the second on October 25, 1990. The certified letter was returned to DEA on November 1, 1990, marked "Unclaimed."[2]

On October 17, 1990, and for the two following weeks, DEA published notice of the seizure and its intent to proceed with forfeiture in USA Today, a newspaper of general circulation in the District of Vermont. As no claims were received by DEA regarding Taft's truck, the truck was summarily forfeited by administrative procedure on November 27, 1990. The United States Marshal's Service sold the truck at a public auction on August 31, 1991. Eighty-five percent of the proceeds of the sale was distributed to state and local law enforcement agencies on or about November 6, 1991. The remainder of the proceeds was retained by the federal government and deposited in the Asset Forfeiture Fund.

During the period between his arrest and trial in the criminal case, Taft had filed a number of pretrial motions, including a motion to suppress physical evidence.[3] These motions were heard by this Court in April, 1991. During a hearing on April 3, 1991, DEA Agent Doud testified that the truck had been seized for forfeiture. However, no mention was made of the forfeiture proceeding itself, or more specifically, the Notice of Seizure. Agent Doud was testifying about the weapons found during the search of the truck and the Court had inquired whether a search warrant had been issued. When Doud responded "No" the Court inquired by what authority he had searched the vehicle. Doud stated the truck had been seized pursuant to 21 U.S.C. § 881 for forfeiture purposes and that its contents had been invento-

2. An item of certified mail is returned to its sender marked "Unclaimed" in the event that the addressee fails to pick it up after two notices and so long as no change of address has been filed. If the addressee does not live at the address given, the mail would be marked "Return to Sender—Addressee Unknown, or Attempted Unknown." *See* Godin Aff. (Paper 10).

3. Also during this period of time, Taft was contesting the forfeiture of his real properties in Stowe and Montgomery which had been seized for forfeiture in August, 1990. *See United States v. Three Parcels of Land in Stowe, Vermont,* No. 90–235 (D.Vt. filed Aug. 28, 1990).

ried which led to the discovery of the weapons. No inquiry nor statement was made regarding whether the truck had actually been forfeited. The sole reference was to its seizure.

Trial in the criminal case began on July 9, 1991. A verdict of NOT GUILTY on all counts was returned on July 17, 1991. In his affidavit, attorney Behm noted that he was present throughout the whole trial and could not recall any testimony during the trial regarding Cole's alleged conversations with Taft at the time of his arrest, nor any mention of the administrative forfeiture proceedings. Yet, he stated, the circumstances and statements surrounding Taft's arrest were related and dissected in detail at the trial. Behm further stated:

> During the time I represented Taft, I was aware that the Government sometimes delays the institution of forfeiture proceedings against property until after the criminal proceedings against the owner of the property have been resolved. Taft's ability to contest a civil forfeiture action while the criminal charges against him were pending was very limited because to effectively defend the civil action against his truck, he would have had to waive his Fifth Amendment privilege and testify, which, in turn, would have severely compromised his criminal defense.

> I was also aware that sometimes the Government postponed indefinitely or abandoned its institution of forfeiture proceedings against seized property. In any event, I believed that if and when the Government decided to commence forfeiture proceedings against the truck, Taft or I would receive notice of such action. If I had received any information from anyone that forfeiture proceedings had been commenced against Taft's truck, I would have

promptly filed a claim to the truck on Taft's behalf.

Behm Aff. ¶ 12. (Paper 17)

One year later, in a letter dated August 14, 1992, Taft, through his attorney, requested information from the DEA regarding the status of his truck. The DEA responded in a letter dated September 3, 1992, that the truck had been administratively forfeited on November 27, 1990. This civil action followed.

### Discussion

The Government moves to dismiss, or in the alternative, for summary judgment, under four separate theories.[4] First, the Government states that there was no Fifth Amendment due process violation; the notice provided to Taft was adequate. Second, since there is no Fifth Amendment violation, there is no subject matter jurisdiction to decide Taft's Fourth Amendment claim. After an administrative forfeiture is completed, a Fourth Amendment challenge of the seizure can only be addressed through the back door of a Fifth Amendment violation. Third, the Government takes the position that this Court has no jurisdiction to issue the particular declaratory judgment requested by Taft: to declare Taft entitled to the vehicle free and clear of any governmental interest is to review a discretionary DEA forfeiture decision. Finally, the Government argues that a grant of equitable relief in this case is unwarranted under the common law doctrine of laches. The Court will address these issues seriatim.

### I. ADEQUATE NOTICE OF SEIZURE

#### A. Civil Forfeiture

[I]t appears to have been the law from the very earliest times that an inanimate object that is the instrumentality by which the law is violated is forfeited as an act of

---

4. The Government's first memorandum in support of its motion addressed Taft's claim for compensatory damages as well as equitable relief. Taft responded by filing a motion for leave to amend his complaint to withdraw the claim against the Government for compensatory damages and to add two individual defendants and a claim against those defendants for monetary relief. Taft also filed a memorandum in opposition to the Government's motion with reference to his amendments. The Government's reply memorandum addressed the amended claims against the Government and argued that summary judgment was still appropriate. Since the Court has granted Taft leave to amend his complaint, the Court's Opinion and Order today does not address the Government's argument regarding compensatory relief as it is now moot.

vengeance against the object. Its owner suffers the loss of the property on a negligence theory or as part of the price an owner must pay for permitting personal or real property to be an occasion for violating the law. Such is now the rule in American jurisprudence.

*United States v. 785 St. Nicholas Avenue,* 983 F.2d 396, 402 (2d Cir.), *cert. denied sub nom. Beckford v. United States,* —— U.S. ——, 113 S.Ct. 2349, 124 L.Ed.2d 258 (1993). Presently, under statutory civil forfeiture laws, the Government may subject a conveyance to forfeiture if the conveyance was used in, or intended for use in, or in any manner facilitated the transportation, sale, receipt or possession of illegal narcotics. 21 U.S.C. § 881(a)(4). The Government sought forfeiture of Taft's truck under section 881(a)(4).

 As a general rule, DEA must follow the forfeiture procedures set forth under the customs laws. *Id.* § 881(d). Two forms of forfeiture are available: summary forfeiture pursuant to an administrative procedure, or a judicial procedure. 21 C.F.R. §§ 1316.71–1316.81 (April 21, 1992). Administrative forfeiture is generally precipitated by a seizure. 21 U.S.C. §§ 881(b), (d). The forfeiture process itself commences upon the Government's publication of notice of seizure. *Onwubiko v. United States,* 969 F.2d 1392, 1398 (2nd Cir. 1992); *Floyd v. United States,* 860 F.2d 999, 1008 (10th Cir.1988). In addition to the publication requirement, DEA must also send written notice of the seizure to each party having an interest in the property. 19 U.S.C. § 1607(a). This notice must include information regarding the applicable procedures for contesting the anticipated forfeiture or for petitioning for return of the property or for mitigation. *Id.* A claimant thereafter has the prerogative to choose the forum of adjudication. *United States v. One 1987 Jeep Wrangler,* 972 F.2d 472, 479 (2d Cir.1992).

One option for the claimant is to contest the validity of the seizure and forfeiture in a judicial forum by filing a claim and cost bond with the DEA within twenty days of the first date of publication. 21 C.F.R. § 1316.78. Upon receipt of the claim and bond, the case is sent to the United States Attorney for purposes of instituting condemnation proceedings in a court of law. *Id.*

An alternative to the judicial proceeding is to allow the administrative process to continue. If a claimant does not file the requisite claim and cost bond within the twenty day period, administrative forfeiture occurs by default. 21 C.F.R. § 1316.77. A claimant may then petition the administrative agency for remission and/or mitigation. 28 C.F.R. §§ 9.1–9.7. An appeal may be taken from final DEA decisions. 21 U.S.C. § 877.

### B. *Jurisdictional Issues*

 If a particular DEA administrative forfeiture proceeding was properly commenced, a district court has no subject matter jurisdiction to adjudicate the forfeiture in a peripheral setting. *Jeep Wrangler,* 972 F.2d at 479; *In re Application of Mayo,* 810 F.Supp. 121, 122 (D.Vt.1992). To hold otherwise thwarts the DEA's grant of administrative authority and ignores the "jurisprudential particularities of actions *in rem.*" *Jeep Wrangler,* 972 F.2d at 479. However, an administrative forfeiture begun in a procedurally deficient manner will not divest a district court of subject matter jurisdiction. In such circumstances, a court retains its equity jurisdiction to correct the decision. *Onwubiko v. United States,* 969 F.2d 1392, 1398 (2d Cir.1992). Nowhere is this remedial exception more necessary than in the case where the initial notice to an interested party is inadequate to properly advise him or her of the appropriate procedures and remedies. Summary forfeiture without notice to a party of that person's right to judicially contest the validity of a seizure and forfeiture is a clear violation of an individual's constitutional right to due process. An individual's failure "to resort to the statutory scheme for obtaining a judicial forfeiture cannot be taken to deprive this court of jurisdiction to hear [that person's] claims that [he or she] did not receive constitutionally adequate notice of the availability of judicial forfeiture. . . ." *Marshall Leasing, Inc. v. United States,* 893 F.2d 1096, 1103 (9th Cir.1990).

 Be that as it may, a party may not sue the United States unless the United States has waived its sovereign immunity

and consented to suit. *Lehman v. Nakshian,* 453 U.S. 156, 160, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981). That consent must be unequivocally expressed, and its terms will define a court jurisdiction. *Id.* In this case, Taft has asserted subject matter jurisdiction under the Court's federal question jurisdiction, 28 U.S.C. § 1331, and a waiver of sovereign immunity under the Administrative Procedures Act ("APA"), 5 U.S.C. § 702.[5]

■ It is indisputable that the issues raised herein are federal questions. Further, it is by now well-recognized that in the forfeiture context, section 702 provides a waiver for issues relating to the adequacy of notice. *See e.g., Sarit v. United States,* 987 F.2d 10, 17 (1st Cir.1993) (citing *Marshall Leasing, Inc. v. United States,* 893 F.2d 1096, 1102–03 (9th Cir.1990) and *Willis v. United States,* 787 F.2d 1089, 1092–93 (7th Cir. 1986)); *Montgomery v. Scott,* 802 F.Supp. 930, 934 (W.D.N.Y.1992). That is, the APA waives sovereign immunity over Taft's claims for equitable relief based on unconstitutional agency action. *Marshall Leasing,* 893 F.2d at 1099. The return of forfeited property or its monetary equivalent is equitable relief. *Id.* (citing *Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988)). Thus, Taft's Fifth Amendment claims will not be dismissed on jurisdictional grounds.

### C. Summary Judgment

■ With a valid waiver of sovereign immunity, the Court now reaches the Government's argument for summary judgment on the merits of Taft's constitutional due process claim. "Summary judgment is a tool to winnow out from the trial calendar those cases whose facts predestine them to result in a directed verdict." *United Nat'l Ins. Co. v. The Tunnel, Inc.,* 988 F.2d 351, 355 (2d Cir.1993). On a motion for summary judgment, the Court must determine whether factual issues exist that justify a trial. The Court does not resolve factual disputes. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate in those cases where the nonmoving party has failed to produce any evidence of a genuine issue as to any material fact, and the moving party has rested his motion on a valid legal theory that entitles him to judgment as a matter of law. Fed.R.Civ.P. 56(c). Substantive law guides the Court in determining what facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). All ambiguities and reasonable inferences are resolved in favor of the nonmoving party. *Knight v. United States Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

■ Taking the position that the notice sent to Taft was adequate to meet due process requirements, the Government states that the only inquiry for the Court is whether the Government's conduct was reasonable when it sent the Notice of Seizure to Taft's Stowe address. Taft need not have actually received the Notice of Seizure for the Court to find in the Government's favor. The Government also points out that the Court should consider the extent of Taft's knowledge regarding the seizure and impending forfeiture as well as his conduct in changing his residence without notifying DEA. In response, Taft argues that summary judgment is inappropriate because there are a number of disputed material facts concerning Taft's knowledge of the forfeiture process and whether DEA knew or could have easily discovered Taft's change of address. These facts, Taft argues, directly affect the issue of adequacy of notice. The crux of Taft's argument is that a determination as to adequacy of notice must be based upon a review of all

---

**5.** Section 702 of the APA provides, in pertinent part:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.
5 U.S.C. § 702.

of the circumstances in this case, including DEA's conduct after finding that the notice mailed to Taft's Stowe address was ineffective. As discussed below, Taft's argument on this issue carries the day.

■■■■■ To begin, civil forfeiture is not punishment. Therefore many of the procedural protections afforded an individual in a criminal case are unavailable in civil forfeiture proceedings. *See United States v. 4492 Livonia Road,* 889 F.2d 1258, 1270 (2d Cir. 1989), *reh'g denied,* 897 F.2d 659 (2d Cir. 1990). The proceedings must, however, comport with constitutional due process. When an individual is entitled to notice, "process which is a mere gesture is not due process." *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 315, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). In articulating the by-now familiar standard, the Supreme Court stated:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance.

*Id.* at 314, 70 S.Ct. at 657. A court should consider the "practicalities and peculiarities" of each case in determining whether these conditions are met. *Id.* at 314–15, 70 S.Ct. at 657–58. The Court went on to state: "The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.* at 315, 70 S.Ct. at 657. If the Government knew or should have known that the notice it sent would be ineffective, the means employed will not meet due process requirements. *Robinson v. Hanrahan,* 409 U.S. 38, 40, 93 S.Ct. 30, 31–32, 34 L.Ed.2d 47 (1972) (per curiam). *See also Gutt v. United States,* 641 F.Supp. 603, 606 (W.D.Va.1986) (Where there was evidence showing DEA knew Gutt was not at address and that he was represented by counsel in a related criminal proceeding, notice was inadequate.); *Montgom-*

*ery v. Scott,* 802 F.Supp. 930, 936–37 (W.D.N.Y.1993) (Failure to make additional attempt to notify plaintiff when first notice was returned and DEA knew counsel represented plaintiff in related criminal case, notice was inadequate.). But due process does not require actual receipt. *Weigner v. City of New York,* 852 F.2d 646, 649, 650 (2d Cir.1988); *cert. denied,* 488 U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 777 (1989).

The Government relies extensively on the First Circuit's opinion in the *Sarit* case as support for its argument that the Court need look no further than the DEA's initial action in sending the notice to the Stowe address. *See Sarit v. United States,* 987 F.2d at 13–16. In that case, the court rejected the argument that DEA should have notified counsel directly of the pending forfeiture or should have ascertained the plaintiff's correct address from counsel. The court found that DEA had acted reasonably in mailing the notice to the address from which the property was seized. However, the court proceeded to determine whether DEA's duty "changed in light of its subsequent discovery that the mailed notice had been ineffective." *Id.* at 14; *see also Montgomery v. Scott,* 802 F.Supp. at 936–37. Obviously, the court did not hold that the only relevant inquiry was the reasonableness of DEA's initial action in mailing the notice.

Following *Mullane's* directive to consider all of the circumstances of the case, the *Sarit* court ultimately found the notice adequate because it found that plaintiff's counsel had received a memorandum from the Government which put him on notice that the Government was seeking forfeiture. *Sarit,* 987 F.2d at 15. That memorandum was in response to a motion for return of property, and it stated that the property held by the Government was being held for administrative forfeiture. In addition, the memorandum provided the seizure number and stated that notice would be sent to all interested parties and that publication of the notice would begin within two months. *Id.* at 12. The court determined that under these circumstances, "the damage done by the ineffective notice could and ought to have been stemmed by plaintiff's counsel." *Id.* at 15.

■ By way of analogy, the Government in this case notes that during the pretrial proceeding in the criminal case, Taft was put on notice that the vehicle had been seized under the forfeiture statutes. However, a seizure is distinct from a decision to seek forfeiture which requires in the first instance, an agency finding of probable cause to believe the property is forfeitable. Presumably, Taft knew his vehicle had been seized at the time of his arrest. What he did not know was that at some point after his arrest, the Government had determined that probable cause existed to forfeit the truck. Notice of seizure alone is not sufficient to satisfy due process requirements and *Sarit* is not to the contrary. No memorandum or other form of notice to Taft advised him that the Government would seek forfeiture.

The Court agrees with the plaintiff in this case that there are factual disputes surrounding the application of the *Mullane* standard to the notice provided to Taft. First, it must be determined whether DEA knew or should have known that Taft was not residing at the Stowe address. The Wutkiewicz Affidavit suggests that he was not aware of any change of address; however, Taft states that he believes a local DEA office was aware of the fact that he was in Ohio, but that in any event, the information was only a phone call away. The Court is troubled by the fact that DEA seized the Stowe property yet asserts it was unaware that Taft was not residing there. Second, it must be determined whether DEA knew or should have known that Taft was represented by counsel in a pending proceeding and whether it would have been reasonable to provide notice through such counsel when it determined that the notice by mail had been ineffective. In addition, I note that the discovery process has not yet wended its way to conclusion, and it is questionable whether there has even been adequate opportunity for discovery. Accordingly, summary judgment on the issue of adequacy of notice is inappropriate at this time.

6. Section 701(a) provides:
 This chapter applies, according to the provision thereof, except to the extent that—
 (1) statutes preclude judicial review; or

## II. FOURTH AMENDMENT CLAIM AGAINST THE GOVERNMENT

The Government's argument regarding want of jurisdiction on the Fourth Amendment claim is founded on the presumption that Taft's Fifth Amendment claim is meritless. The adequacy issue carried the Fourth Amendment issue into court. Absent inadequate notice, the Government argues that there is no means to attack the legality of the seizure in this case. Given that there are factual disputes regarding the Fifth Amendment issue, the Government's motion to dismiss the Fourth Amendment claim is not yet ripe for consideration.

## III. DECLARATORY JUDGMENT

■ The Government contends that the particular declaratory relief requested by Taft—a judgment that he is entitled to ownership of his truck free and clear of any governmental interest—is precluded by this Court's limited grant of jurisdiction. The Government argues that in order to grant Taft the declaratory relief he requests, the Court must effectively review the agency's decision to forfeit the vehicle which is expressly outside the purview of the APA waiver. *See* 5 U.S.C. § 701(a).[6] In other words, if the Court finds that the notice was inadequate the Government believes the case should be remanded to DEA for further proceedings rather than returning the vehicle or proceeds to Taft.

■ The exceptions applicable to the APA waiver of sovereign immunity embody the general principle that agency decisions are subject to judicial review in the absence of Congressional intent to preclude it. *See* 5 U.S.C. § 701(a); *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967). Agency decisions to enforce a law, being generally committed to an agency's discretion, are presumptively unreviewable. *Heckler v. Chaney*, 470 U.S. 821, 831, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985).

 (2) agency action is committed to agency discretion by law.
 5 U.S.C. § 701(a).

Thus, the Court would be precluded from reviewing DEA's decision to seek forfeiture in this case. The question of whether the Court may review the propriety of a given forfeiture is, however, a different question. Claims based on an alleged inadequacy of notice do not challenge DEA's discretion to enforce a law. *Sarit v. D.E.A.*, 759 F.Supp. 63, 68 (D.R.I.1991). The declaratory judgment which Taft requests, *i.e.*, one entitling him to his vehicle or its monetary equivalent free and clear of any governmental interest, does not require a review of DEA's decision to seek forfeiture. Rather, it reviews whether the summary forfeiture was unconstitutional in light of the notice given in this case. The inadequate notice triggers the Court's jurisdiction to grant equitable relief, including a declaratory judgment.[7] It is uncontested that such relief includes a declaration that the forfeiture is null and void. A null and void forfeiture places the vehicle in the same position it was in at the time of the seizure when Taft owned the vehicle free and clear of any interest. Accordingly, the distinction which the Government makes regarding the particular relief sought in this case appears meaningless. The motion to dismiss the declaratory judgment claim for lack of subject matter jurisdiction is denied.

## IV. *LACHES*

The Government's final argument in support of its motion is based on the application of the doctrine of laches to the facts of this case. In sum, the Government contends that Taft's filing of his civil action comes two years too late—he knew of the seizure at the time of his arrest in August, 1990, yet waited until August, 1992, to inquire as to the status of his truck. In addition, the Government has changed its position and would be prejudiced were these claims allowed—the truck has been sold and the bulk of the proceeds distributed to state and local agencies. Taft is apparently arguing justifiable ignorance.

He contends that adequate notice was a predicate to his assertion of his rights. In addition, Taft makes reference to his preparations before and during his criminal trial. Finally, Taft notes that a laches defense is available only to a party with clean hands: the Government's inducement to delay Taft's claim of right precludes any use of the defense.

A court's inquiry regarding whether an affirmative defense of laches is available is two-fold. First, the court must determine whether a plaintiff's delay in bringing his claim was unreasonable; and if so, whether the defendant was prejudiced. *Stone v. Williams*, 873 F.2d 620, 623 (2d Cir.1989), *cert. denied*, 493 U.S. 959, 110 S.Ct. 377, 107 L.Ed.2d 362 vacated on other grounds, 891 F.2d 401 (1989). "The answers to these questions are to be drawn from the equitable circumstances peculiar to each case." *Id.* at 623–24. With regard to delay, the issue is not the number of years of delay, but whether the delay was reasonable. *Id.* at 623. Since factual disputes of a material nature still exist in this case, it would be inappropriate under this standard to consider summary judgment on the issue of laches at this time.

### Conclusion

In sum, the Government's Motion To Dismiss Or In The Alternative, For Summary Judgment is hereby DENIED. (Paper 5)

---

**7.** The declaratory judgment remedy is simply that, a remedy; the statutory provision creating such relief does not enlarge a court's jurisdiction. *Albradco, Inc. v. Bevona*, 982 F.2d 82, 85 (2d Cir.1992); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72, 70 S.Ct. 876, 878–79, 94 L.Ed. 1194 (1950). Thus, a declaratory judgment plaintiff must have an independent basis for federal jurisdiction. *Albradco*, 982 F.2d at 85. Moreover, actions for declaratory judgment are *sui generis*, being neither legal nor equitable in nature. 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 2313. The form of relief determines the nature of the action. *Simler v. Conner*, 372 U.S. 221, 223, 83 S.Ct. 609, 611, 9 L.Ed.2d 691 (1963).