**UNITED STATES of America**

v.

**Michael J. DERENAK, et al.**

**No. 95–29–CR–T–17(B).**

United States District Court,
M.D. Florida,
Tampa Division.

Nov. 23, 1998.

❦⟶5

Robert E. O'Neill, Jeffrey J. Del Fuoco, U.S. Attorney's Office, Tampa, FL, for U.S.

Thomas H. Ostrander, Thomas H. Ostrander, P.A., Bradenton, FL, for Defendant, Michael J. Derenak.

*ORDER ON MOTION TO SET ASIDE FORFEITURE & RETURN PROPERTY*

KOVACHEVICH, Chief Judge.

This cause is before the Court on Defendant, Michael J. Derenak's, Motion to Set Aside Forfeiture and Return Property (Dkt.411), and the Government's Motion to Strike Defendant's Motion (Dkt.415).

## FACTS

The following facts are relevant to the resolution of this motion:

1. On January 24, 1995, the Drug Enforcement Administration ("DEA") arrested Defendant, Michael Derenak ("Derenak"), for purchasing ten kilograms of cocaine from an undercover DEA agent. Pursuant to the arrest, the DEA took possession of $18,-600.00 in United States currency and a 1977 Porsche automobile, which Derenak used to purchase the cocaine.

2. In post-Miranda statements to the DEA, Derenak admitted that the money belonged to his co-conspirator, Michael McConnell. Following the arrest, the DEA proceeded with administrative proceedings to forfeit the currency and the vehicle.

3. On February 14, 1995, a federal grand jury returned an indictment against Derenak, charging him in Count One with conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. § 846, and in Count Two with possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

4. DEA computerized records show that five forfeiture notices were mailed to Derenak: 1) on February 21, 1995, notice was mailed to the Polk County Jail in care of Derenak's inmate number; 2) on April 3, 1995, notice was given to the United States Marshal's Service after Derenak had been transferred from Polk County Jail to the Marshal's custody; 3) also on April 3, notices were mailed to Derenak's three prior residential addresses. These computerized records were introduced and received as Gov-

ernment's Exhibit 1 in an evidentiary hearing on March 29, 1996.

5. On April 17, 1995, co-conspirator McConnell pled guilty. Pursuant to a plea agreement, McConnell agreed to forfeit the $18,600.00 used to purchase the cocaine.

6. On May 18, 1995, the DEA summarily forfeited the Porsche automobile pursuant to administrative forfeiture proceedings.

7. On August 8, 1995, the Porsche automobile was sold at auction for $3,600.00.

8. On March 29, 1996, in an evidentiary hearing regarding Derenak's Request for Immediate Postrestraint Adversary Hearing to Release Assets Needed to Hire Private Counsel, Derenak was made aware of the forfeiture of the Porsche and currency. Testimony in the hearing also established that Derenak had been in government custody since January 24, 1995. At the conclusion of the hearing, the Court determined that probable cause existed for the forfeitures because they were used in a drug transaction, (Dkt. 337 at 27), but the Court did not address the issue of whether the forfeiture was procedurally proper. (Dkt. 337 at 29).

9. On July 1, 1998, Derenak filed a Motion to Set Aside Forfeiture and Return Property Seized from Defendant, alleging that the forfeiture was procedurally improper.

## STANDING

To have standing to contest forfeiture under 21 U.S.C. § 881(a)(6), the Eleventh Circuit has stated that a claimant must demonstrate an " 'ownership or possessory interest in the property seized.' " *United States v. Four Million, Two Hundred Fifty–Five Thousand,* 762 F.2d 895, 907 (11th Cir.1985) (quoting *U.S. v. Five Hundred Thousand Dollars,* 730 F.2d 1437, 1439 (11th Cir.1984)). A claimant must come forth with more than a mere allegation of ownership. *See Torres v. $36,256.80 U.S. Currency,* 25 F.3d 1154, 1158 (2d Cir.1994); *United States v. $38,570 U.S. Currency,* 950 F.2d 1108, 1113 (5th Cir.1992). The claimant must "submit some additional evidence of ownership along with his claim in order to establish standing to contest forfei-

ture." *$38,570 U.S. Currency,* 950 F.2d at 1113.

■ Pursuant to this standard, the Court finds that Derenak does not have standing to contest the forfeiture of the $18,600.00. Derenak has not come forth with any evidence that he had any ownership interest in the money. On the contrary, the evidence shows that in a post-Miranda statement to the DEA, Derenak admitted that the money actually belonged to Michael McConnell, an alleged co-conspirator. (Dkt. 415 at 1). In the evidentiary hearing on March 29, 1996, Derenak also never contested the fact that the money actually belonged to McConnell. (Dkt. 337 at 28–29). Because Derenak has failed to meet his burden of coming forth with some additional evidence that he had an ownership interest in the money, the Court concludes that Derenak has no standing to contest the forfeiture of the $18,600.00. *See U.S. v. Three Hundred Sixty Four Thousand Nine Hundred Sixty Dollars [$364,960.00] in U.S. Currency,* 661 F.2d 319, 326 (5th Cir. 1981) (holding that "a party seeking to challenge the government's forfeiture of money or property used in violation of federal law must first demonstrate an interest in the seized item sufficient to satisfy the court of its standing to contest the forfeiture").

With respect to the Porsche, however, the Court finds that Derenak does have standing to contest the procedures used in its forfeiture. Testimony in the evidentiary hearing established that Derenak held title to the Porsche when he used it as partial payment for the cocaine. (Dkt. 337 at 11). Moreover, the Government does not dispute that Derenak was in fact the legal owner of the Porsche at the time the cocaine deal transpired. The Court concludes, therefore, that Derenak has met the minimum threshold requirements to have standing to contest the Porsche's forfeiture. Accordingly, the following discussion will be limited to the procedures the DEA used to forfeit the Porsche only, and not the $18,600.00.

## DISCUSSION

Defendant Derenak contends that he never received the requisite notice from the DEA that his property, a 1977 Porsche automobile,

was subject to forfeiture pursuant to 21 U.S.C. § 881. Accordingly, Derenak asserts that the DEA forfeited his property without due process of law as required by the Fifth Amendment of the United States Constitution. The Government contends that Derenak's motion should be stricken because federal courts lack jurisdiction to review the merits of the DEA's administrative forfeiture decision; or in the alternative, Derenak's motion should be treated as a motion for return of property under Fed.R.Cr.P. 41(e), and as such should be time-barred by this Court's Order dated February 27, 1995. (Dkt. 10 at 3) (requiring all motions to be filed within twenty-one days).

### Civil Forfeiture

#### A. Background

■ Federal law recognizes two basic types of forfeiture proceedings: civil and criminal. Criminal forfeiture, governed by 21 U.S.C. § 853, is an *in personam* action against the alleged criminal. Criminal forfeiture proceedings commence only after a criminal conviction. *See* 21 U.S.C. § 853(a). Civil forfeiture, however, may occur without regard to a criminal conviction and is governed by 21 U.S.C. § 881. Unlike criminal forfeiture, civil forfeiture is an *in rem* action directly against the subject property. These civil forfeitures are descendants of the deodand. "At common law the value of an inanimate object directly or indirectly causing the accidental death of a king's subject was forfeited to the Crown as a deodand. The origins of deodand are traceable to Biblical and pre–Judeo–Christian practices, which reflected the view that the instrument of death was accused and that religious expiation was required." *Austin v. United States*, 509 U.S. 602, 611, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) (quoting O. Holmes, The Common Law, C. 1 (1881)). Conceptually, civil forfeiture is not punishment for the alleged criminal, but an action directly against the guilty property. Derenak's motion contests a civil forfeiture under § 881.

#### B. Civil Forfeiture Procedure, Notice, & Default

Section 881(a)(4) provides that "[a]ll conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property" that constitutes a controlled substance may be civilly seized and forfeited. Two forms of civil forfeiture procedures are available to the Government: an administrative procedure, *see* 21 C.F.R. § 1316.77, or a judicial procedure under 21 C.F.R. § 1316.78. For property valued at $500,000.00 or less, the Government may proceed under the administrative forfeiture procedure. *See* 19 U.S.C. § 1607(a); 21 U.S.C. § 881(d); 21 C.F.R. §§ 1316.75–77; *Weng v. United States*, 137 F.3d 709, 712 (2d Cir. 1998). Because the value of the Porsche was less than $500,000.00, the DEA proceeded under the administrative forfeiture procedure.

After a seizure, the administrative forfeiture procedure begins with the DEA publishing a notice of seizure and intent to forfeit the property. *See* 19 U.S.C. § 1607(a); 21 C.F.R. § 1316.75(a). Section 1316.75(a) provides that publication shall be accomplished by publishing the notice and intent to forfeit "once a week for at least 3 successive weeks in a newspaper of general circulation in the district in which the processing for forfeiture is brought." In addition to notice by publication, the DEA must also send "[w]ritten notice of seizure together with the information on the applicable procedures ... to each party who appears to have an interest in the seized article." 19 U.S.C. § 1607(a). Thus, two forms of notice are required: 1) notice by way of publication, and 2) actual written notice to a party having an interest in the property. *See* 19 U.S.C. § 1607(a); 21 C.F.R. § 1316.75(a).

Once the administrative forfeiture process is commenced, a claimant has twenty days from the date of first publication of notice to contest the forfeiture by filing a claim and a cost bond. *See* 19 U.S.C. §§ 1607, 1608; 21 C.F.R. § 1316.75(b); *United States v. Idowu*, 74 F.3d 387, 394 (2d Cir.1996)). If the claimant files the claim and bond, the administrative forfeiture process halts and forfeiture proceedings continue as a judicial forfeiture proceeding in federal district court. *See* 19 U.S.C. 1609; 21 C.F.R. §§ 1316.76(b),

1316.78. If the claimant does not file the claim and bond within twenty days, however, administrative forfeiture occurs by default. *See* 19 U.S.C. §§ 1608, 1609; 21 C.F.R. § 1316.77. Thereafter, a claimant's only recourse is to petition the DEA within thirty days after receiving notice for remission. *See* 28 C.F.R. § 9.3.

### C. Jurisdictional Issues

The Government contends that once the administrative forfeiture is complete, and no claim or bond has been filed, the federal courts lack jurisdiction to review the agency's decision. Accordingly, the Government contends that because the magistrate judge found that probable cause existed for the forfeiture, (Dkt. 337 at 29), the Court lacks jurisdiction to consider the DEA's forfeiture decision.

■ It is well established that once the administrative forfeiture process begins, and the defendant fails to timely object, "a federal district court lacks jurisdiction to review the merits of any administrative forfeiture decision, *unless the administrative forfeiture is procedurally deficient.*" *See United States v. Millan–Colon,* 836 F.Supp. 994, 999 (S.D.N.Y.1993) (emphasis added). If the DEA, or other government agencies, forfeit property "accidentally, fraudulently, or improperly," however, the district court retains jurisdiction for the limited purpose of determining "whether the agency followed the proper procedural safeguards when it declared [defendant's] property summarily forfeited." *See id.* (citing *Scarabin v. Drug Enforcement Admin.,* 919 F.2d 337, 338 (5th Cir.1990)). Indeed, a number of courts agree that the federal courts retain this limited form of jurisdiction. *See, e.g., Weng v. United States,* 137 F.3d 709, 713 (2d Cir.1998); *Boero v. Drug Enforcement Admin.,* 111 F.3d 301, 305 (2d Cir.1997); *United States v. Giraldo,* 45 F.3d 509, 511 (1st Cir.1995); *United States v. Woodall,* 12 F.3d 791, 793 (8th Cir.1993); *Taft v. United States,* 824 F.Supp. 455, 462 (D.Vt.1993). Similarly, the Eleventh Circuit has held that equitable jurisdiction may be appropriate if the claimant's "failure to properly seek legal relief resulted from errors of procedure and form or the

government's own misconduct." *In re Sixty Seven Thousand Four Hundred Seventy Dollars ($67,470.00),* 901 F.2d 1540, 1545 (11th Cir.1990). Federal court jurisdiction may also be proper if the claimant alleges such things as constitutional violations which do not "challenge the DEA's determination on the merits, but rather the nature of the adjudicatory process itself." *Id.* If a federal question is presented under these circumstances, federal court jurisdiction is properly invoked pursuant to 28 U.S.C. § 1331. *See id.*

■ Because Derenak's due process argument does not go to the merits of the DEA's forfeiture decision, but to whether the DEA followed the proper procedure in providing Derenak adequate notice, the Court finds that it has jurisdiction to review the DEA's notice procedure, whether it be based on the Court's equitable jurisdiction or on federal question jurisdiction pursuant to 28 U.S.C. § 1331. Consistent with the case law cited above, however, this inquiry does not review the merits of the DEA's decision to forfeit Derenak's Porsche; rather, the Court's inquiry is limited to reviewing whether the process used by the DEA was sufficient to give Derenak adequate notice of the seizure and pending forfeiture. *See Millan–Colon,* 836 F.Supp. at 999.

Having found the Government's argument that this Court lacks jurisdiction unpersuasive, we also note at this juncture that the Court disagrees with the Government's alternative argument that Derenak's motion should be treated as a motion for return of property under Fed.R.Cr.P. 41(e). Suffice it to say that the Eleventh Circuit has found that "Rule 41(e) applies only to criminal proceedings and is expressly inapplicable to forfeiture of property in violation of a statute of the United States." *In re $67,470,* 901 F.2d at 1544 n. 4. This being the case, the Court now turns to consider whether the DEA provided Derenak adequate notice.

### D. Adequate Notice

■ To reiterate, 19 U.S.C. § 1607 requires the DEA to give two different forms of notice: 1) notice by publication in a newspaper of general circulation, and 2) actual

written notice to Derenak informing him of the seizure of the Porsche and the DEA's intention to forfeit the property. The record of the evidentiary hearing establishes that the DEA satisfied the notice by publication requirement. A DEA agent testified that the DEA used the *USA Today* newspaper to satisfy the notice by publication requirement set forth in 19 U.S.C. § 1607(a). (DKT. 337 at 16–17, 19–20). The Court finds that the DEA's use of *USA Today* satisfies this publication requirement. *See U.S. v. Rodgers,* 108 F.3d 1247, 1251 (10th Cir.1997) (stating that "[i]t is undisputed that the DEA's publications in USA Today satisfies the forfeiture statute's 'notice by publication' requirement"). Therefore, the only remaining issue is whether the DEA's attempts to give Derenak actual written notice were sufficient. Derenak contends that, because he never actually received any written notice from the DEA informing him that the Porsche was subject to forfeiture, the DEA did not satisfy the notice requirement. The Court disagrees.

The constitutional due process benchmark for adequate notice requires that the notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). It is also settled that the *Mullane* standard applies to notice given pursuant to administrative forfeiture proceedings. *See Pou v. U.S. Drug Enforcement Admin.,* 923 F.Supp. 573, 578 (S.D.N.Y. 1996) (citing *United States v. 51 Pieces of Real Property,* 17 F.3d 1306, 1316 (10th Cir. 1994); *Taft v. United States,* 824 F.Supp. 455, 464 (D.Vt.1993)).

Due process, however, does not require that a forfeiture claimant actually receive written notice. *See Pou,* 923 F.Supp. at 578. "Under most circumstances, notice sent by ordinary mail is deemed reasonably calculated to inform interested parties that their property rights are in jeopardy." *Weigner v. City of New York,* 852 F.2d 646, 650 (2d Cir.1988) (finding that the Supreme Court has unequivocally held that "notice by

first-class mail is sufficient, notwithstanding the Court's obvious awareness that not every first-class letter is received by the addressee. Particularly where mailing is supplemented by other forms of notice such as posting or publication, the risk of non-receipt is constitutionally acceptable") (citations omitted). Thus, first class mail satisfies due process if the DEA reasonably believed that the mail reached the intended recipient. *See id.; Torres v. $36,256.80 U.S. Currency,* 25 F.3d 1154, 1161 (2d Cir.1994).

Here, DEA computerized records establish that the DEA mailed five separate and distinct written notices to Derenak. (Dkt. 337 at 14). The DEA agent at the evidentiary hearing could not say whether the notice letters were sent to Derenak by first-class mail or by certified mail, return receipt requested. (Dkt. 337 at 20). The records clearly establish, however, that on February 21, 1995, the DEA mailed written notice to Derenak in care of his inmate number to the Polk County Jail where Derenak was in custody. (Dkt. 337 at 14). On April 3, 1995, written notice was also sent to the United States Marshal's Service in Tampa after Derenak was transferred from the Polk County Jail to federal custody. Finally, also on April 3, 1995, written notice was mailed to all three of Derenak's known home addresses. (Dkt. 337 at 14). Accordingly, the Court finds that the DEA's efforts to serve Derenak adequate notice, especially when supplemented by publication in the *USA Today* newspaper, was constitutionally adequate, even though Derenak may not have actually received notice.

In addition, the Court emphasizes that not only did the DEA send notice to all three of Derenak's home addresses, *see U.S. v. Rodgers,* 108 F.3d 1247, 1251 (10th Cir.1997) (finding that notice sent to only two of three addresses insufficient), but more importantly, the DEA also sent notice to the government institutions where it knew Derenak was being held. It has been said that "where a claimant is 'residing at the place of the government's choosing,' the seizing agency must take steps to locate the claimant in order to satisfy due process." *United States v. Giraldo,* 45 F.3d 509, 511 (1st Cir.1995) (quoting

*Torres v. $36,256.80 United States Currency,* 25 F.3d 1154, 1161 (2d Cir.1994)). The Court finds that the DEA took the necessary steps to locate and send the appropriate notice to Derenak while in government custody. Indeed, Derenak's own motion establishes that he was in the Polk County Jail and under the supervision of the United States Marshal's Service. (Dkt. 411 at 2–3). Moreover, the record is void of any evidence suggesting that the notice letters went unclaimed.

Given this evidence, the Court concludes that the DEA's efforts were "reasonably calculated" under the circumstances to apprise Derenak of the impending forfeiture of the Porsche. *See 51 Pieces of Real Property,* 17 F.3d at 1316; *See also Weigner,* 852 F.2d at 650. Thus, the Court concludes that the DEA's efforts to give Derenak actual written notice were constitutionally sufficient even if the DEA used regular mail as opposed to the more certain certified mail. *See Tulsa Professional Collection Services, Inc. v. Pope,* 485 U.S. 478, 481, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988); *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 799–800, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983).

Having found that the DEA satisfied both 19 U.S.C. § 1607's notice by publication requirement and actual written notice requirement, the Court concludes that the DEA's notice efforts did not run afoul of the *Mullane* standard for constitutionally adequate notice. Accordingly, it is

**ORDERED** that Defendant's Motion to Set Aside Forfeiture and Return Property Seized from Defendant (Dkt.411) and the Government's Motion to Strike (Dkt.415) be **DENIED.**