Fernando Mesa **VALDERRAMA,**
Plaintiff,

v.

**UNITED STATES of America,**
**Defendant.**

No. 04–20670CIVKING.

United States District Court,
S.D. Florida,
Miami Division.

July 22, 2004.

William V. Roppolo, Esq., Gerson M. Joseph, Esq., Ellsworth Roppolo, P.A., Miami Beach, FL, for Plaintiff.

Alejandro O. Soto, AUSA, Miami, FL, for Defendant.

## *FINAL ORDER GRANTING THE GOVERNMENT'S MOTION TO DISMISS*

JAMES LAWRENCE KING, District Judge.

THIS CAUSE is before the Court upon the Government's Motion to Dismiss, filed June 8, 2004.[1]

---

1. On June 16, 2004, Plaintiff filed his Response. On July 1, 2004, the Government filed its Reply. On July 7, 2004, Plaintiff filed his Sur–Reply.

## FACTUAL AND PROCEDURAL BACKGROUND [2]

Plaintiff is a resident and citizen of Columbia. In 1990, Plaintiff purchased three investment policies from Eagle Star International Life ("Eagle Star"). Eagle Star held the policies in accounts located on the Isle of Man. Between 1990 and 2002, Plaintiff made annual contributions to the policies. However, in 2002, Plaintiff's businesses began to falter, and on or about March 19, 2002, Plaintiff requested a partial withdrawal of $100,000 from his accounts.[3] Prior to this request, Plaintiff had never withdrawn money from the accounts.

On or about April 18, 2002, Eagle Star informed Plaintiff that it would mail to its office in Bogota, Colombia a check for $100,000 drawn from JP Morgan Chase Manhattan Bank and would then deliver the check to Plaintiff. Eagle Star shipped the check to Bogota in an envelope addressed to Mr. Jorge Santallana. However, while the check was en route from the Isle of Man to Bogota, the United States Customs Service seized the check in Miami, Florida. According to the Government, Customs seized the check for violation of 18 U.S.C. § 1956, laundering of a monetary instrument.

On May 7, 2002, Customs sent a letter to Mr. Santallana, informing him of the seizure and the fact that the check was sub-ject to forfeiture, and detailing the legal options available in response to the seizure.[4] These options included requesting a judicial forfeiture proceeding, filing an administrative petition for relief from forfeiture, or doing nothing and abandoning the property. Attached to the letter was an Election of Proceedings CAFRA Form AF, which allows a claimant to choose any one of these three options.[5]

On May 31, 2002, Plaintiff responded to Customs' letter. Plaintiff's response included a signed CAFRA Form AF on which Plaintiff chose the option of filing an administrative petition to contest the forfeiture.[6] On June 10, 2002, Plaintiff filed his administrative petition, in which he claimed that the funds in the accounts were not the proceeds of unlawful activity and requested the return of his check.[7]

Ten months later, in April of 2003, Plaintiff received a phone call from Special Agent Daniel Flores of the Department of Homeland Security, Immigration and Customs Enforcement ("ICE"). Mr. Flores informed Plaintiff that he was the agent in charge of the investigation regarding Plaintiff's check. After several conversations, including at least one meeting in person, Plaintiff and Mr. Flores agreed to a settlement in early June of 2003, whereby Plaintiff would waive his claim to $40,000 and the Government would return $60,000.[8] Mr. Flores informed Plaintiff

---

2. To a large extent, the facts underlying this case are not disputed. However, as will be noted *infra* at 1337, because this is a Motion to Dismiss, the Court accepts as true all facts alleged by Plaintiff and resolves all factual disputes in Plaintiff's favor.

3. On May 29, 2002, Eagle Star sent Plaintiff a letter which stated that as of that date, Plaintiff's accounts contained just over $173,000. Plaintiff's requested withdrawal would have reduced that amount to just over $73,000. (Def.'s Reply, Ex. A).

4. (Def.'s Mot. Ex. 1).

5. (Def.'s Mot. Ex. 2).

6. (Def.'s Mot. Ex. 3, 4).

7. (Def.'s Mot. Ex. 5).

8. The Government denies that the parties finalized a settlement agreement. According to the Government, Special Agent Flores informed Plaintiff that the settlement agreement could not become final without his supervisor's approval.

that he would prepare the settlement agreement and send it to Plaintiff.

On June 30, 2003, Plaintiff had not received a written settlement agreement from Special Agent Flores, and United States Customs and Border Protection ("CBP") sent Plaintiff a letter informing him that Plaintiff's administrative petition had been denied.[9] The letter included Plaintiff's case number and specifically referred to the check in question. The letter informed Plaintiff that administrative forfeiture proceedings would be initiated thirty (30) days from the date of the letter. Plaintiff claims that he disregarded the letter because of the settlement agreement he had negotiated with Mr. Flores, and because he had never had any dealings with CBP.

On August 7, 2003, Plaintiff still had not received a written settlement agreement from Special Agent Flores when CBP sent Plaintiff a letter informing him that CBP would soon initiate administrative forfeiture proceedings regarding Plaintiff's check.[10] However, the letter also advised Plaintiff that within twenty (20) days from the time CBP first published notice of the proceedings, Plaintiff could elect to have the matter referred to federal court for judicial forfeiture proceedings. Again Plaintiff disregarded the letter because of his settlement agreement with Special Agent Flores. Plaintiff attempted to contact Mr. Flores during the month of August but was not able to do so. Finally, on September 12, 2003, BCP called Plaintiff to inform him that his check had been forfeited.

Even though Customs had forfeited Plaintiff's check, Plaintiff believed that Customs would be unable to redeem the check because Plaintiff had not endorsed it. Therefore, Plaintiff contacted Eagle Star and requested a new check. However, on November 25, 2003, Eagle Star informed Plaintiff by letter that pursuant to instructions received from Customs, Eagle Star could not issue a new check.[11]

On March 22, 2004, Plaintiff commenced this case by filing his Motion to Set Aside Administrative Forfeiture, pursuant to 18 U.S.C. § 983(e) and 28 U.S.C. § 1331. In his Motion, Plaintiff raises five arguments in support of his request:

(1) a non-endorsed, non-negotiable check is not subject to administrative forfeiture proceedings;

(2) Customs wrongfully seized Plaintiff's check without a warrant;

(3) Customs wrongfully effected a constructive seizure of Plaintiff's Eagle Star accounts without a warrant;

(4) Customs failed to provide adequate notice of the constructive seizure of Plaintiff's accounts;

(5) Customs failed to provide adequate notice that it had commenced administrative forfeiture proceedings regarding Plaintiff's check.

In its current Motion, the Government argues that this Court lacks subject matter jurisdiction to address Plaintiff's first three arguments because a claimant may only raise procedural due process claims concerning an administrative forfeiture. The Government further argues that Plaintiff's fourth argument is subject to dismissal because Plaintiff received constructive notice of the constructive seizure of Plaintiff's accounts. Finally, the Government argues that Plaintiff's fifth argument is subject to dismissal because the Government complied with all notice re-

---

9. (Def.'s Mot. Ex. 10).

10. (Def.'s Mot. Ex. 11).

11. (Pl.'s Mot. To Set Aside Administrative Forfeiture, Ex. 4).

quirements regarding the administrative forfeiture of Plaintiff's check.

## LEGAL STANDARD

A motion to dismiss will be granted only where it is clear that no set of facts consistent with the allegations could provide a basis for relief. Fed.R.Civ.P. 12(b)(6). "It is well established that a complaint should not be dismissed for failure to state a claim pursuant to Fed. R. Civ. Pro. 12(b)(6) 'unless it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to relief.'" *Bradberry v. Pinellas County*, 789 F.2d 1513, 1515 (11th Cir. 1986) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). For purposes of a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and accept as true all facts alleged by the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

## DISCUSSION

A. *This Court lacks subject matter jurisdiction to entertain Plaintiff's first three claims, which challenge the legitimacy of the administrative forfeiture and the Government's warrant-less seizures of Plaintiff's property.*

■ After the Government administratively forfeits a person's property, that person may only seek relief in a district court under 18 U.S.C. § 983(e) when the Government has failed to comply with all applicable notice requirements. As the statute states,

"any person entitled to written notice in any non-judicial civil forfeiture proceeding under a civil forfeiture statute *who does not receive such notice* may file a motion to set aside a declaration of forfeiture with respect to that person's interest in the property."

(Emphasis added). Similarly, courts have held that if the Government forfeits property "accidentally, fraudulently, or improperly," a district court may retain jurisdiction for the purpose of determining "whether the agency followed the proper procedural safeguards when it declared property summarily forfeited." *United States v. Derenak*, 27 F.Supp.2d 1300, 1304 (M.D.Fla.1998) (citing *Scarabin v. Drug Enforcement Admin.*, 919 F.2d 337, 338 (5th Cir.1990)); *see also In re Sixty Seven Thousand Four Hundred Seventy Dollars ($67,470.00)*, 901 F.2d 1540, 1545 (11th Cir. 1990) (holding that equitable jurisdiction may be appropriate if the claimant's "failure to properly seek legal relief resulted from errors of procedure and form or the government's own misconduct.").

■ However, it is significant that each of these cases—and all others cited by Plaintiff—involved challenges to the process by which the Government effected an administrative forfeiture, as opposed to challenges to the legitimacy of the administrative forfeiture itself.[12] In other words, courts will permit claimants to challenge an administrative forfeiture when procedural missteps denied them the opportunity to challenge the merits of the forfeiture, but not when claimants had an opportunity to present all of their arguments at the administrative level. Plaintiff provides no authority for the proposition that following a procedurally sound

---

12. In support of his contention that each of his claims is properly before the Court, Plaintiff also cites *Weng v. United States,* 137 F.3d 709 (2d Cir.1998); *Boero v. Drug Enforcement Admin.,* 111 F.3d 301 (2d Cir.1997); *United*

States v. Giraldo, 45 F.3d 509 (1st Cir.1995); United States v. Woodall, 12 F.3d 791 (8th Cir.1993); and Taft v. United States, 824 F.Supp. 455 (D.Vt.1993).

administrative forfeiture proceeding, a plaintiff may file a claim in federal court to contest the legitimacy of the proceeding itself.

■ In the instant case, Plaintiff's first three claims do not involve challenges to the process of administrative forfeiture. Plaintiff argues that his check was not subject to administrative forfeiture, only to judicial forfeiture. However, on two occasions—in May of 2002 and in August of 2003—the Government gave Plaintiff the opportunity to request a judicial forfeiture, and Plaintiff declined both times. Moreover, Plaintiff could have raised this argument in the context of his administrative petition, yet he failed to do so. Similarly, Plaintiff has also had prior opportunities to raise his arguments concerning the Government's warrant-less seizures. This Court lacks jurisdiction to give Plaintiff a further opportunity to raise questions of legitimacy he could have raised earlier, in either the administrative context or before a court.

Plaintiff further argues that even if 18 U.S.C. § 983(e) and 28 U.S.C. § 1331 do not sustain these claims, the Court should invoke its equitable jurisdiction to award Plaintiff relief. However, the Court will not invoke its equitable jurisdiction after Plaintiff has had multiple opportunities to appear before a court and failed to avail himself of those opportunities. Therefore, the Court finds that Plaintiff's first three claims are subject to dismissal for lack of subject matter jurisdiction.

B. *Plaintiff cannot contest the administrative forfeiture of his check under 18 U.S.C. § 983(e) because the Government provided written notice to Plaintiff that the check had been seized and was subject to forfeiture.*

■ As noted *supra* at 1337, 18 U.S.C. § 983(e) states,

"any person entitled to written notice in any non-judicial civil forfeiture proceeding under a civil forfeiture statute *who does not receive such notice* may file a motion to set aside a declaration of forfeiture with respect to that person's interest in the property."

Moreover, notice must "be reasonably calculated, under all circumstances, to apprise interested parties of the pendency of [an] action and afford them an opportunity to present their objections." *Larry Dean Dusenbery v. United States,* 534 U.S. 161, 168, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002) (citing *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). However, "one opportunity for access to the full range of procedural protections is adequate to comport with due process." *Toney v. Burris,* 881 F.2d 450, 454 (7th Cir.1989).

■ In his fifth claim, Plaintiff argues that the Government failed to provide adequate notice to Plaintiff that it had commenced administrative forfeiture proceedings regarding Plaintiff's check. Specifically, Plaintiff asserts that BCP's letters of June 30, 2003 and August 7, 2003 did not provide reasonable notice to Plaintiff because Plaintiff believed he had negotiated a settlement with Special Agent Flores of ICE and had never heard of BCP.

However, Plaintiff's argument is flawed for two reasons. First, BCP's letters of June 30, 2003 and August 7, 2003 were reasonably calculated to inform Plaintiff that administrative forfeiture proceedings would soon begin. As noted above, the letters included Plaintiff's case number, specifically referred to his check by number, and unambiguously informed Plaintiff both that his administrative petition had been denied and that the Government would soon commence administrative forfeiture proceedings. By August 7, 2003, Plaintiff had not received any communica-

tion from Mr. Flores in nearly two months. An objectively reasonable person would have realized that the letters, rather than a purported settlement agreement that had never been put in writing, established the Government's position regarding Plaintiff's check.

Second, even if BCP's letters legitimately confused Plaintiff, Customs had already satisfied its notice obligations in May of 2002. It is undisputed that Customs' May 7, 2002 letter provided personal notice to Plaintiff that his check had been seized and was subject to administrative forfeiture. Even though the letter was not addressed to Plaintiff, Plaintiff responded to the letter on May 31, 2002 and acknowledged receipt of the letter in the administrative petition he filed on June 10, 2002. Therefore, BCP's letters of June 30, 2003 and August 7, 2003 constituted a second notice of impending administrative forfeiture which was not even necessary to satisfy procedural notice requirements. The Court will not penalize the Government for gratuitously providing personal notice to Plaintiff for a second time. Therefore, Plaintiff's fifth argument is subject to dismissal, and this Court lacks jurisdiction under 18 U.S.C. § 983(e) to return Plaintiff's check.

C. *Even if the Government improperly effected a constructive seizure of Plaintiff's Eagle Star accounts, the Government remains entitled to Plaintiff's check; however, a constructive seizure of the accounts is no longer necessary.*

 In his fourth claim, Plaintiff contends that the Government failed to provide notice to Plaintiff of its constructive seizure of Plaintiff's Eagle Star accounts. Moreover, the Government does not deny that it constructively seized the accounts.[13] However, Plaintiff's Motion asks the Court to set aside the Government's administrative forfeiture, and the Government has not forfeited the accounts; the Government has merely forfeited Plaintiff's check. Therefore, Plaintiff may not use the wrongful seizure of his accounts as a means of reclaiming his check, and the Government remains entitled to Plaintiff's check.

 Nevertheless, the Government constructively seized Plaintiff's accounts only to protect its ability to redeem Plaintiff's check.[14] Since the Government has forfeited Plaintiff's check, constructive seizure of the accounts is no longer necessary. Therefore, the Court will order the Government to promptly notify Eagle Star that any remaining assets in Plaintiff's accounts are no longer subject to constructive seizure.

Accordingly, after a careful review of the record and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that the Government's Motion to Dismiss be, and the same is hereby, GRANTED. Plaintiff's Motion to Set Aside Administrative Forfeiture is DISMISSED in its entirety. This case is CLOSED. All pending Motions are DENIED as moot. It is further

ORDERED and ADJUDGED that the Government shall promptly notify Eagle Star International Life that any remaining assets in Plaintiff's accounts are no longer subject to constructive seizure.

---

**13.** *In its current Motion, the Government initially denied having constructively seized Plaintiff's accounts but reversed its position in its Reply and now admits to doing so.*

**14.** *See Customs' May 7, 2002 Letter to Eagle Star (Def.'s Reply, Ex. C).*