CHRISTIE v. CRAWFORD.

1. SALES—CONTRACT—GUARANTY—CONSTRUCTION.

Where dealers engaged in buying imported horses for breeding purposes by the carload sold a stallion under a guaranty that he should be a sure foal getter, and agreed in case he should not prove to be such to return the purchase price or replace him with another horse of the same breeding and price, they were entitled, upon return of the horse sold, to a reasonable time within which to produce another under the guaranty, and two weeks was, as a matter of law, such a reasonable time.

2. SAME—GUARANTY—BREACH—DAMAGES.

Where a horse sold under a contract of guaranty has been returned to the seller for breach of the guaranty, and there has been a failure to replace him with another of the same breeding and price as agreed, the measure of the buyer's damages is the value of a horse of the same breeding and price as the one sold, not exceeding the purchase price, with interest from the time the horse should have been replaced.

Error to Macomb; Erskine, J. Submitted January 22, 1908. (Docket No. 116.) Decided May 1, 1908.

Assumpsit by Charles Christie and others, copartners as the Capac Horse Breeding Association, against John Crawford and Milton D. Comstock, copartners as Crawford & Comstock, for breach of warranty on the sale of a horse. There was judgment for plaintiffs, and defendants bring error. Reversed.

*Frederick B. Brown* (*Lincoln Avery*, of counsel), for appellants.

*Cady & Crandall* (*Stephen H. Clink*, of counsel), for appellees.

HOOKER, J. The defendants are copartners, and dealers in imported horses for breeding purposes, residing and

doing business in this State. The plaintiffs, with two or three others since deceased, also copartners, purchased a stallion named Willard from the defendants, giving therefor their three promissory notes, aggregating $2,000, and taking the following written contract of guaranty:

"Now, therefore, we hereby guarantee the above-named horse to be a sure foal getter, also a reproducer of good stock with proper care and handling. In case he should not prove so we agree to take back said stallion by the first of September, 1902, and return to the said Capac Horse Breeding Association their notes or money or replace him with another horse of the same breeding and price upon delivery of the above-named horse at Comstock and Crawford's barn at Byron, Michigan, in as good and sound condition as he is at present.

"This is the only contract given by us and is not to be changed or varied by any promises or representations by our agents."

Plaintiffs used the horse during the season of 1901, without complaint, but on February 27, 1902, wrote the following letter to the defendants:

"CAPAC, MICHIGAN, February 27, 1902.
"Mr. COMSTOCK and CRAWFORD:
"*Dear Sirs:* The Capac Horse Association will meet at James Burk Hotel on March 7th, as the horse Willard does not prove to be a foal getter and will have to be returned to Comstock and Crawford's farm, Byron, Michigan, at their expense.
"Yours truly,
"JESSE FRANTZ, Secretary."

No further communication passed between the parties until August 26th. Meantime the plaintiffs continued to use the horse in their business. On August 26, 1902, they sent the horse to the defendants, and they being absent, he was put in their barn without their knowledge. The next day one of the defendants was seen by plaintiffs' agent and informed that the horse had been returned by direction of the plaintiffs. The testimony offered by plaintiffs was to the effect that they informed defendants that they had returned the horse, under the provisions of

the guaranty, and that they demanded the return of the notes, or their equivalent in money, or another horse, to comply with the terms of the contract. The defendants declined to return the notes or pay the amount thereof, but expressed a willingness to give plaintiffs another horse, to be selected from several horses then in their barn, and, if these were not satisfactory, that plaintiffs could choose from a car load. which they expected in within a couple of weeks. Plaintiffs' agent declined to accept any of the horses in the barn upon the ground that they were of different breed and color. The agent then went away. Within two weeks plaintiffs were notified that defendants had a horse for them, to which they replied as follows:

"CAPAC, MICHIGAN, September 19th, 1902.
"COMSTOCK and CRAWFORD,
            "Byron, Michigan.
   "*Dear Sirs:* I received your letter and in reply, the horse association held a meeting and decided not to take another horse as you had none to fill his place when they were there at your place. Now, it is getting too late as a number of the association wants to breed this fall; in fact some had bred already. They voted that not to pay the note as there were no value received at the last meeting.
                        "J. FRANTZ."

It also appears that on September 1st, the plaintiffs had a meeting. We insert a copy of the record thereof:

   "CAPAC, MICHIGAN, September 1st, 1902.
   "Capac Horse Breeding Association met at 8 o'clock and called to order by Charles Christie, chairman.
   "Moved by Archie McDougall, and supported by Norman Clause, that we refuse to pay the note due on the first of September, 1902, and now in the Capac Savings Bank for collection and if we are sued to immediately serve notice on Comstock and Crawford of the action, and notify them to come into court and defend said suit and as soon as the time elapses to file answer that we pay said note and look to Comstock and Crawford for damages. Motion was unanimously carried.
   "Moved and supported that we adjourn. Carried.
            Signed,            "J. FRANTZ,
                        "Secretary."

There was other testimony tending to show that at the first meeting after the horse was returned the plaintiffs decided not to accept another horse, but there is not in the record of the meeting of September 1st, and the witnesses differ upon the question. That was, therefore, a question for the jury. The plaintiffs were forced to pay their notes, the same having been sold. They brought this action upon the contract of guaranty to recover damages for the breach thereof, and obtained a judgment. Defendants have appealed.

Construction of the contract. The important questions in the case are, whether the court should have held that the defendants were entitled to a reasonable time to furnish another horse, and whether two weeks was a reasonable time, and whether there was error in the charge in relation to the measure of damages. The first involves a construction of the writing evidencing the guaranty. Counsel for plaintiffs claim that there was a breach thereof when defendants failed to have another satisfactory horse for the plaintiffs ready for delivery on August 26th. The court did not accede to this claim, and instructed the jury that the defendants were entitled to a reasonable time to produce such a horse as plaintiffs were entitled to under the contract, leaving the jury to determine whether two weeks was a reasonable time. Counsel for defendants insist that this should not have been left to the jury, and that from the undisputed facts the court should have said that two weeks was a reasonable time within which to comply with the demand.

The claim that defendants violated their contract of guaranty on August 26th is not tenable. They could not have been expected to have and keep on hand at all times a horse which should be acceptable to the plaintiffs, or one which would in all respects be exactly similar to Willard, with the added requirement of the guaranty. The court correctly held that they were entitled to a reasonable time within which to procure one, and, under the uncontradicted testimony, we feel warranted in deciding,

as a matter of law, that two weeks was not an unreasonable time within which to do so. Counsel insist that this was a question for the jury. Had there been any conflict of evidence or dispute upon the circumstances, it would have been a question for the jury, or had there been any opportunity for reasonable minds to differ upon the question we should not reverse the case upon this ground. When we take into consideration the necessary method of conducting defendants' business, viz., buying imported horses by the car load, and the expense, if not the impracticability, of keeping such a horse constantly on hand during a period of uncertainty, it would be unreasonable to conclude that the parties contemplated any such interpretation of the contract. See *Druse* v. *Wheeler*, 26 Mich. 189, 195, 199; *Bowen* v. *Railway Co.*, 54 Mich. 501; *Gridley* v. *Tobacco Co.*, 71 Mich. 528, 533; *Couch* v. *Mining Journal Co.*, 130 Mich. 294, 299. For other cases, see 23 Am. & Eng. Enc. Law (2d Ed.), p. 971 n.; 6 Current Law, p. 1004.

Measure of damages. The learned circuit judge instructed the jury as follows on the question of damages:

"Plaintiffs' measure of damages, in case you find for them, would be the value of a horse of the same breeding and price as the one sold by defendants to plaintiffs, not to exceed the purchase price, together with interest at five per cent. from the time you find that said horse should have been replaced by said defendants."

In view of a possible new trial, we state that this was proper upon the theory of plaintiffs' counsel that this was an action for damages for breach of a contract of guaranty.

Other questions. It is unnecessary to discuss or express an opinion upon other questions, except to say that we sustain the rulings of the court on the introduction and exclusion of evidence.

For the reasons given, the judgment is reversed, and a new trial ordered.

GRANT, C. J., and OSTRANDER and CARPENTER, JJ., concurred. MONTGOMERY, J., concurred in the result.