## COMSTOCK *v.* TAGGART.

1. APPEAL AND ERROR—NEW TRIAL—REFUSAL TO GRANT—EXCEPTIONS—NECESSITY.

   The refusal of the court to grant a new trial on the ground that the verdict and judgment rendered thereon were against the weight of the evidence cannot be considered on appeal, where no exception was taken to the denial of the motion.

2. SAME—EVIDENCE—ADMISSIBILITY—WARRANTY.

   In an action on a promissory note given as a part of the purchase price of a horse, testimony of a verbal warranty in regard to the horse was not prejudicial to plaintiff's rights, where the only substantial difference between the verbal and the written warranty was as to the time and place of return of the horse in case he did not fulfill the terms of the warranty; the essential feature of the warranty being whether or not the horse was "a sure foal getter," which question was properly submitted to the jury.

3. SALES—WARRANTY—DELIVERY—TIME—INSTRUCTIONS.

   In such action, it appearing upon the undisputed evidence, as well as by the admissions in defendant's plea and notice, that the sale was made on a certain day, and that the only question for the jury was whether a written guaranty bearing an earlier date was given and accepted as part of the transaction, it was error to refuse an instruction that if such guaranty was so given it was the only guaranty by which plaintiff was bound.

4. SAME—BREACH OF WARRANTY—DAMAGES—INSTRUCTIONS.

Where, in such action, defendants under their plea and notice
   sought to recoup damages for breach of a warranty, the
   court properly instructed the jury, if they found for defend-
   ants, that the measure of damages was to be determined by
   the value of the horse at the time of sale, if he had been as
   represented, less the amount of the note in suit and whatever
   sum had been indorsed on certain other notes not yet due
   and which had been pledged as collateral security for the
   payment of plaintiff's note to a third party; the action of
   plaintiff in placing the notes out of his control amounting to
   an acceptance of them as payment.

Error to Shiawassee; Miner, J. Submitted January
12, 1909. (Docket No. 63.) Decided March 16, 1909.

Assumpsit by Martin D. Comstock against Clark Tag-
gart and others on a promissory note. There was judg-
ment for defendants, and plaintiff brings error. Re-
versed.

*Austin E. Richards*, for appellant.

*Thomas D. Meggison*, for appellees.

BLAIR, C. J. This is an action on a promissory note
for $600, being one of three notes executed by the 13 de-
fendants for the purchase price of a stallion. The other
two notes were for $800 each. The notes were dated
August 29, 1904, and were payable, respectively, on
October 1, 1906, 1907, and 1908. Defendants pleaded the
general issue and gave notice that, prior to and at the
time of the sale of the stallion, "which sale was made by
the delivery of said notes to plaintiff on, to wit, Septem-
ber 14, 1904," at Central Lake, Antrim county, plaintiff's
agent and the plaintiff, in person, warranted that the
stallion was absolutely sound and a sure foal getter, and
plaintiff did personally warrant that the stallion "was a
first-class foal getter and did then and there expressly
warrant said stallion to get with foal at least 90 per cent.
of all the mares he would serve for breeding purposes,"

etc.; that the stallion was worthless as a foal getter, and they claimed the right to recoup their damages. Defendants gave evidence tending to show that there was a verbal warranty that the horse was a sure foal getter, and that they might return him, if dissatisfied, at any time before the third note fell due, to the livery barn in Central Lake, and that they had so returned him. Plaintiff gave evidence tending to show that the warranty was in . writing and was as follows:

"BYRON, MICH., August 29, 1904.

"This article witnesseth: That whereas, I have this day sold to the Central Lake Horse Breeding Association the French coach stallion, Navigator, No. 1,675, now therefore I hereby guaranty the above-named horse to be a sure foal getter, also a reproducer of good stock with proper care and handling. In case he should not prove so I agree to take back said stallion by October 1, 1906, and return to the Central Lake Horse Breeding Association their notes or money or replace him with another horse of the same breed and size upon delivery of the above-named horse at M. D. Comstock's barn at Byron, Michigan, in as good and sound condition as he is at present. This is the only contract given by me and is not to be changed or varied by any promises or representations of my agents."

The case was submitted to the jury and a verdict returned for defendants assessing their damages at $1,466.

Plaintiff has brought the record to this court for review upon the following assignments of error, viz.:

(1) The court erred in overruling plaintiff's motion for a new trial.

(2 and 3) That the court erred in refusing to strike out certain testimony.

(4) The court erred in refusing to give plaintiff's eighth request to charge.

(5) The court erred in charging as to the effect of the written guaranty if given "after the notes were signed and the bargain made."

(6) The court erred in his instruction as to the meaning of the terms "a sure foal getter."

(7) The court erred in charging the jury in relation to the question of damages.

1. The ground of the motion for a new trial was that "the verdict of said jury and the judgment entered thereon are unjust as being against the weight of the evidence." In response to a proper request from plaintiff, the circuit judge filed his reasons for denying the motion. In order to render such decision reviewable, the statute requires that exception shall be taken thereto. 3 Comp. Laws, § 10504; *Knop* v. *Insurance Co.*, 101 Mich. 359; *Pearl* v. *Township of Benton*, 136 Mich. 697; *Culver* v. *Railroad Co.*, 144 Mich. 254; *Moffet* v. *Sebastian*, 149 Mich. 451. We find no exception in the record to the decision of the circuit judge denying the motion, and therefore cannot consider it.

2 and 3. Certain testimony was received against objection, as follows:

" At that time Mr. Comstock said the horse would pay for himself, that we wouldn't have to pay a cent for him. I had very little talk with Comstock at the time. That the horse was full blooded and would have to breed after himself. * * *

"*Q.* What did he say about the earnings and the guaranty as to them?

"*Mr. Richards:* I object to that. If it was said it would not be the basis of a warranty. It would not constitute a warranty. It would not be the statement of any fact to be the basis of a warranty.

"*The Court:* I will receive it for the present. (To which ruling plaintiff then and there excepted.)

"*A.* He said we had nothing to lose and everything to gain. He said if this horse had not earned the price of himself when these notes became due, he says, 'You can take him back to the barn.' He says, 'You ain't paying one dollar for that horse, not a dollar.' He said the horse would pay for himself under those guaranties, that he would be a sure foal getter and that if he didn't we could return him."

Counsel for plaintiff contend:

"That this testimony was incompetent and immaterial

and prejudicial, for the reason that, if the statements were made as claimed by the witness, they could not be the basis of a warranty. They were simply expressions of opinion. They were promissory in their nature and were not the statement of any fact."

Even if this testimony was inadmissible as not tending to prove a warranty, still we do not think its reception could have been prejudicial as the case was submitted. Substantially the only difference, as stated by counsel in their briefs, between the verbal warranty and the written warranty, was as to the time and place of return, which, according to the verbal warranty, was to be made at the livery stable at Central Lake, at any time before the third note fell due. The essence of the warranty was that the horse should be "a sure foal getter," and whether he was or was not was the question submitted by the court. The answer to this question depended upon the testimony of several witnesses for each party as to what constituted "a sure foal getter," and whether the use of the stallion as testified to by his handlers brought him within the class. We do not think the determination of this question could have been so prejudiced by the reception of the testimony in question as to justify a reversal.

4. Plaintiff's eighth request to charge was as follows:

"If you find that on the day the business of selling this horse by plaintiff to defendants was finally closed up and completed, and as a part of the same transaction plaintiff gave to the defendants a written warranty or guaranty of the horse as claimed by the plaintiff, and that if you find the guaranty under which plaintiff sold the horse was as claimed by plaintiff, then such written warranty or guaranty constituted and is the only warranty upon which defendants can rely in this case, and the only warranty by which plaintiff is bound, and if you find the warranty was in writing and as claimed by plaintiff, and if the horse did not comply with such warranty, it was then the duty of defendants to have returned the horse to plaintiff's barn in Byron, Mich., by October 1, 1906; and it appearing without dispute in this case that the defendants did not return the horse to plaintiff's barn in Byron, plaintiff is entitled to a verdict in this case."

This request the court refused "to give except as in the instruction already given." Defendants' counsel contend that all that was material in this request was covered by the giving of plaintiff's third, fourth, fifth, sixth, and seventh requests to charge. The third request stated that plaintiff had offered evidence "tending to prove that he sold and delivered the stallion," etc.; the fourth, that "if the horse in question was sold by the plaintiff to the defendants under this written warranty," etc.; the fifth, "if you find that the plaintiff sold and delivered, etc., under the written warranty;" the sixth, "if the horse in question was sold and delivered, etc., under a written warranty;" the seventh, substantially the same. It will be observed that all of these requests are predicated upon a sale or a sale and delivery of the horse under a written guaranty. Under the undisputed evidence the delivery of the horse was made on September 14, 1904. Defendants' counsel contend that the notes were signed and the sale of the horse completed prior to the 14th of September, 1904.

"The parties' minds in this case had fully met on all essential requirements previous to the date of their organization. Plaintiff had shown defendants the horse and made certain warranties concerning him. Defendants had signed for shares of stock and signed their joint and several notes for said horse. Nothing remained to be done to complete the sale"—citing authorities to the effect that title may pass without delivery.

The court also instructed the jury as follows:

"I further charge you that it is not necessary that a representation in order to constitute a warranty should be simultaneous with the conclusion of the bargain, but only that it should be made during the course of the dealings which lead to the bargain, and should then enter into the bargain as a part of it, and I charge you in this connection that if the bargain had been closed and the notes given before the plaintiff delivered his written guaranty, if you find he did so deliver a written guaranty, then the written guaranty has no bearing in this case, and the

rights of the parties must depend upon such guaranties as were made before the bargain was closed, unless you find that the defendants accepted written guaranty as a guaranty which should govern and control in this case."

Certain special questions were submitted to the jury, the first being:

" Did the sale and delivery of the horse in question by plaintiff to defendants take place on the 14th day of September, 1904?"

The jury asking for instructions as to the manner of answering this question, the following occurred:

" *The Court:*  Well, that is two questions.

" *The Foreman:*  But the trouble is the two questions are united in one, and according to that question we must answer—

" *The Court:*  If they both did not take place on that day, your answer would be, 'No.' If they both did take place that day, if you found that, your answer would be, 'Yes.' As long as they put two questions in one, they must receive an affirmative or negative answer as to both the questions."

There was testimony tending to sustain this eighth request. In fact the statement in defendants' notice— "which sale was made by the delivery of said notes to plaintiff, on, to wit, September 14, 1904"—constituted an admission that the sale was made on that day. Circuit Court Rule 7e.

Under the undisputed evidence, the notes were not all signed on the same day, but on different days, and were not completely signed until the said 14th of September, when the last signatures were attached. It is apparent from the testimony that the plaintiff was selling the horse to a proposed association of individuals for $2,200 and not interests in the horse to individuals for a less sum. It is also apparent from the record that the purchasers of the horse intended from the beginning to form a company or association of some kind to manage the horse, and the evidence tended to show that the individuals who signed

the note did so with the understanding that the whole purchase price was to be subscribed for before their obligations were to become binding. The purchasers of the horse did not give their individual notes for a specified interest in the horse, but signed notes making them jointly and severally liable for the entire purchase price. We do not think it could have been contemplated that the notes should become operative until they were fully signed. Defendants' witness Drake testified:

" I didn't intend to sign; wanted him to get farmers. I held off, and there was a half share that was $100, which was not paid, and the boys, when they got in the barn, they insisted on my taking it, so I took it.   *   *   *

"Q. When did the several defendants meet to close the matter up ?

"A. That afternoon with Mr. Comstock and met all together in Central Lake, in the livery barn office.

"Q. Were all these defendants present there ?

"A. I think there was one or two that was not. I think Mrs. Eckhart was not there. I didn't see her anyhow, and I think Montgomery was not there at that time. *   *   *

"Q. What was done, after you got there all together, about signing any notes ?

"A. Why, they all got together, as I said a minute ago. I was not a signer at that time yet. They got to work and drew up these notes. I think Mr. Comstock drew them up. I won't be too positive about that today. The notes were drawn up, and the parties were there signed, and after they had all got through signing I took stock in the horse. We organized our association that same day. I was elected treasurer of the association."

The "agreement entered into by the undersigned stockholders of the Central Lake Breeding Association" provided for a president, secretary, treasurer, manager, and a board of three or five directors, and prescribed their duties. It further provided, among other things, as follows:

" The net earnings of the horse shall be divided pro rata among the stockholders at the annual meeting of the association, but no money be paid over to any stockholder until he has paid into the association his proportion of the

note given in payment of the horse and due in that year. Any stockholder failing to make payment when due of the amount he owes on stock in the association shall forfeit his stock and all interests in the stud fees earned by the horse to the other stockholders of the association."

We are of the opinion that it conclusively appears from the defendants' plea and notice and the evidence, that, while individuals signed the notes prior to the 14th of September, they were not completely signed, nor were they delivered to plaintiff, until said day, when the horse was also delivered, and that this question should not have been submitted to the jury as an open question. The only open question on this branch of the case was whether the written warranty was given and accepted as a part of the transaction. Under the circumstances, we think the court erred in refusing to give this request.

7. As to the two $800 notes, plaintiff testified:

"I am the owner of the two $800 notes which were given at the same time as the note sued on in this case was given. They are pledged as collateral security to my own note for $1,000. I indorsed them by writing my name on the back of them.

"Q. Is there any other indorsement on those notes besides that?

"A. $200 is indorsed pro rata on the two $800 notes and the note in suit. The notes are deposited as collateral with a bank in Flint. Davis Bank there—Davison, he is vice president or cashier, or something."

The court, in effect, instructed the jury that if they found for the defendants, they would then first determine the value of the horse at the time of the sale if he had been as represented, and from such amount deduct $734; this latter amount being substantially the amount of the $600 note and the pro rate share of $200 indorsed pro rata on the three notes. This instruction was within the ruling of this court in *Christie* v. *Crawford*, 152 Mich. 400, unless the court erred, as contended by plaintiff, in treating the notes as payment. Plaintiff having placed the two $800 notes out of his control and brought suit on the

$600 note, the court did not err in treating them as accepted by plaintiff as payment. If defendants made any profits from their use of the horse, such profits should be definitely shown.

There are no other questions which require consideration, in our opinion.

The judgment is reversed, and a new trial granted.

GRANT, MONTGOMERY, OSTRANDER, and MOORE, JJ., concurred.