**Juan Carlos ALBAJON, Plaintiff,**

v.

**Special Agent N. GUGLIOTTA of the United States Drug Enforcement Administration, et al. Defendants.**

**No. 98–2719–CIV.**

United States District Court,
S.D. Florida.

Sept. 7, 1999.

AUSA Michael Walleisa, Miami, FL, for Plaintiffs.

J.C. Codias, Miami, FL, for Defendants.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

GOLD, District J.

Juan Carlos Albajon filed this action for the return of approximately $70,000.00 consisting of $3,000 in U.S. Traveler's Checks and $67,000 in U.S. currency.[1] He alleges claims under Federal Rule of Criminal Procedure 41(e), 28 U.S.C. § 2412(D)(1)(A) (Equal Access to Justice Act), the Federal Tort Claims Act, *Bivens,* 42 U.S.C. section 1983 for civil rights violations, common-law tort principles, constitutional violations of the Fourth, Sixth, and Fourteenth Amendments, and "any and all other existing statutory authority not specifically included therein."

The government filed a motion to dismiss. By order dated May 3, 1999, the court provided notice to the parties that it would treat the government's motion to dismiss as a motion for summary judgment.[2] On May 4, 1999, plaintiff filed a motion for summary judgment. Thus this case is presently before the court on cross motions for summary judgment. Among other things, the government makes the following three arguments: (1) it is entitled to summary judgment because the court lacks subject matter jurisdiction over the Tort Claims Act claim as the United States has retained sovereign immunity for claims arising from the detention of goods by law enforcement officers; (2) the agent is entitled to qualified immunity on the *Bivens* claim; and (3) the agent was not acting under state law so as to invoke a civil rights violation under 42 U.S.C. § 1983. Plaintiff argues that he is entitled to summary judgment because the agent lacked probable cause to seize the currency and checks.

### I. FACTS

Drug Enforcement Administration Special Agent Natale Gugliotta received information that Juan Carlos Albajon would be transporting two to three kilograms of cocaine to Maryland and that Albajon would be on a flight leaving from Miami at 4 p.m. on June 27, 1998. After conducting surveillance on Albajon, Gugliotta followed him to the Miami International Airport. At gate "E" of the Miami International

---

1. According to the United States, the actual amount of currency seized was $57,130.00 in U.S. currency and 115 American Express Traveler Checks in the amount of $3,000.

2. In determining this motion, the court considered matters such as the DEA's "Notice of Seizure" letter, the government's receipts for certified mail, and Agent Gugliotta's affidavit.

Airport, Gugliotta approached Albajon who, when asked, produced a Florida drivers license and a plane ticket in the name of William Mendez. Albajon said he was traveling to Germany. An officer from the U.S. Customs Service and his canine "Abbey" responded to gate "E" where Abbey gave a positive alert for the presence of controlled substances in a suitcase and a box belonging to Albajon. Albajon gave Gugliotta permission to inspect the suitcase and the box. Inside the suitcase, the agent found a small amount of U.S. currency. When Gugliotta asked Albajon if he was carrying any other money, Albajon lifted up his pants leg and started taking money from his socks and pant's pockets. In all, $57,130.00 in U.S. currency and $3,000 in American Express Travelers Checks were produced. Albajon gave conflicting explanations about the money, saying that it belonged to his son in Germany, that it belonged to a friend, and that it belonged to Albajon himself. Gugliotta seized the money and travelers checks, believing them to be drug proceeds under 18 U.S.C. § 1960. At the time of the seizure Albajon possessed three Florida drivers licenses, in the names of Juan Carlos Albajon, William Mendez and Juan Bautista Arapajon. Albajon has previous arrests for drug charges.

**A. Notice of the Administrative Forfeiture Proceedings Related to the Seizure of $57,139.00 in United States Currency.** The government initiated administrative forfeiture proceedings against the currency. On September 9, 1998, the DEA sent a "Notice of Seizure" letter by certified mail to two addresses, including Albajon's home address.[3] Notice was sent to Juan Carlos Albajon, a/k/a William Mendez, at 2630 N.W. 13th Avenue Miami, FL 33142. The post office forwarded that letter to 156 Mich. 47, 120 N.W. 29 St. # F, Miami FL 33127 (the address from which plaintiff was surveilled prior to his airport encounter with Gugliotta). Service of that letter was attempted on September 17, 1998, and a final notice was given on September 27, 1998. The letter was returned to the DEA marked "Unclaimed" on October 13, 1998. On September 9, 1998, the DEA also sent the Notice to Juan Carlos Albajon a/k/a William Mendez at 120 N.W. 27th St Miami, FL 33127. That letter was returned to DEA on September 22, 1998, marked "Refused 9/11/98." The Notice informed plaintiff about the seizure of the currency and the applicable statutes and regulations. It stated that Albajon could petition the DEA for return of the property or his interest in it (remission or mitigation), pursuant to 28 C.F.R. §§ 9.1 –9.7 within 30 days of receipt of this notice, and outlined the procedure to be followed. Additionally, the Notice stated that pursuant to 19 U.S.C. § 1602–1619 and 21 C.F.R. §§ 1316.71–1316.81, Albajon could alternatively or additionally contest the seizure and forfeiture of the property in court by filing a claim and posting a $5,000 cost bond, or request a bond waiver if indigent. Seizure of the currency was also advertised in *USA TODAY* on September 2, 9 and 16, 1998. It is undisputed that the plaintiff never submitted a claim and cost bond, or requested a waiver of the bond to secure judicial review of the administrative forfeiture proceedings related to the currency. On December 2, 1998, a "Declaration of Forfeiture" was issued and the currency was administratively forfeited.

**B. Notice of the Administrative forfeiture proceedings relating to 115 American Express Traveler Checks totaling $3,000.** When administrative forfeiture proceedings were initiated against the traveler's checks, the DEA sent a "Notice of Seizure" letter to the plaintiff on October 28, 1998, at six addresses[4] notifying

---

**3.** The addresses were obtained from items in plaintiff's possession as the time of his arrest; his Florida identification card in the name of Juan Carlos Albajon and his Florida driver's license in the name of William Mendez.

**4.** (1) Juan Carlos Albajon a/k/a William Mendez, 2630 NW 13th Avenue Miami, FL 33142; (2) Juan Carlos Albajon a/k/a William Mendez, 120 NW 27th St Miami, FL 33127; (3) Juan Carlos Albajon a/k/a William Mendez,

him of the seizure and the applicable statutes and regulations.[5] The seizure of the traveler's checks was also advertised in *USA TODAY* on November 11, 17 and 25, 1998.

On October 12, 1998, the plaintiff, through his attorney J.C.D. Cobias, Esq., sent a letter to DEA Special Agent N. Gugliotta requesting the return of all the monies and negotiable instruments and informing Special Agent N. Gugliotta if he did not hear from him or the agency by October 22, 1998, he would file legal action in federal court. Thereafter, claimant filed a Rule 41(e) Motion for the Return of Personal Property and Complaint for Damages including Attorney's Fees pursuant to 28 U.S.C. § 2412(D)(1)(A) of the Equal Access to Justice Act; and Motion for Deposit of Monies in Interest Bearing Account Pending Resolution of this Claim.[6]

The DEA sent a letter to Juan Carlos Albajon in care of his attorney advising plaintiff that his claim had been received but was defective. The DEA informed the plaintiff that he had an additional twenty days from receipt of the letter to cure the defect by remitting a cost bond or an affidavit of indigency. Included in the letter was a form affidavit to proceed in forma pauperis in lieu of cost bond. Plaintiff never submitted a cost bond, or requested a bond waiver to secure judicial review of the administrative forfeiture proceedings of the traveler checks.

## II. DISCUSSION

### A. *Federal Tort Claims Act Claim.*

█ The government's first argument is that the court lacks subject matter jurisdiction over plaintiff's claim under the Federal Tort Claims Act.[7]

█ 1. **28 U.S.C. § 2680(c) Exception to Waiver of Sovereign Immunity.** According to the government, there is no jurisdiction under 28 U.S.C. §§ 2674–80 for Albajon's claim because such claims are exceptions from the government's waiver of immunity under the Tort Claims Act. Generally, suits against the United States are barred by the doctrine of sovereign immunity. It is well settled that the United States cannot be sued unless it has expressly waived its sovereign immunity and has consented to be sued. *United States v. Sherwood,* 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Waivers of sovereign immunity are strictly construed in favor of the sovereign. *See United States Department of Energy v. Ohio,* 503 U.S. 607, 112 S.Ct. 1627, 118 L.Ed.2d 255 (1992); *United States v. Nordic Village,*

2708 NW 22nd Court Miami, FL 33142; (4) Juan Carlos Albajon a/k/a Juan Bautista Arapajon, 2708 NW 22nd Court, Miami, FL 33142; (5) Juan Carlos Albajon a/k/a Juan Bautista Arapajon, 2630 NW 13th Ave, Miami, FL 33142; (6) Juan Carlos Albajon a/k/a Juan Bautista Arapajon, 120 NW 27th St, Miami, FL 333127

5. The notice informed Albajon that he could petition the DEA for return of the property or his interest in it (remission or mitigation), pursuant to 28 C.F.R. §§ 9.1 –9.7 within 30 days of receipt of this notice, and outlined the procedure to be followed. In addition, the notice of seizure informed him that, pursuant to 19 U.S.C. § 1602–1619 and 21 C.F.R. §§ 1316.71–1316.81, he could alternatively or additionally contest the seizure and forfeiture of the property in court, i.e. filing a claim and posting a $5,000 cost bond, or if indigent, could request a waiver of the requirement to post a cost bond.

6. Both the currency and traveler checks were in the custody of the United States Marshal's Service in interest bearing accounts prior to any administrative declaration of forfeiture.

7. Although the plaintiff has named an agent and the United States Drug Enforcement Administration as defendants in this case, the court construes the claim as one against the United States. Federal agencies such as the U.S. Drug Enforcement Administration may not be sued *e.o. nemine* in tort. *See* 28 U.S.C. §§ 1346(b), 2679(a); *Allen v. City of Kansas City,* 660 F.Supp. 489, 491 (D.Kan.1987) (suit against HUD dismissed because federal agency is not a proper defendant under the FTCA: under the Act, the only proper defendant is the United States); *Painter v. Federal Bureau of Investigation,* 537 F.Supp. 232, 236 (N.D.Ga.)(FBI not proper defendant under Tort Claims Act).

*Inc.,* 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). Furthermore, a waiver of sovereign immunity cannot be implied; it must be unequivocally expressed by Congress. *See United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980); *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). The terms of the government's consent to be sued in any court define that court's jurisdiction to entertain the suit. *Sherwood,* 312 U.S. at 586, 61 S.Ct. 767. *See also United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Although the Federal Torts Claim Act, 28 U.S.C. §§ 2674–80, provides for a waiver of sovereign immunity, the Act contains certain exceptions; it expressly does not waive immunity for:

> Any claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs or excise or any other law-enforcement officer.

28 U.S.C. § 2680(c). This section has been broadly construed to apply not only to customs officers detaining property, but also to law enforcement officers in other agencies who are performing their lawful duties. *See Schlaebitz v. United States Department of Justice,* 924 F.2d 193, 194 (11th Cir.1991) (confiscation and release to third party of luggage by U.S. Marshal); *United States v. $149,345 United States Currency,* 747 F.2d 1278, 1283 (9th Cir. 1984) (applying the exception to the seizure of money by DEA agents pursuant to 21 U.S.C. § 881); *Sterling v. United States,* 749 F.Supp. 1202 (E.D.N.Y.1990) (seizure of currency by DEA); *United States v. $10,000.00 in United States Funds,* 863 F.Supp. 812, 816 (S.D.Ill.1994) (suits for allegedly unlawful or unconstitutional seizures for forfeiture purposes are not allowed or authorized by the Federal Tort Claims Act); *Ysasi v. Rivkind,* 856 F.2d 1520 (Fed.Cir.1988) (border patrol division of the INS seized truck used to transport an illegal alien); *Milburn v. United States,* 647 F.Supp. 1521, 1525 (S.D.Fla.1986) (seizure of property by U.S. Marshals and FBI).

■ In this case, Special Agent Gugliotta was acting within the scope of her lawful authority when she seized the currency and traveler checks. Accordingly, this cause of action is exempt from the Federal Tort Claims Act by section 2680(c) and sovereign immunity has not been waived. *See Schlaebitz,* 924 F.2d at 195. ("The Tort Claims Act specifically exempts any claim based on the detention of goods by law enforcement officers in the performance of their lawful duties"). Since the United States has not waived its immunity under the Tort Claims Act, this court lacks subject matter jurisdiction to consider plaintiff's claim under the Federal Tort Claims Act *See Stanley v. Central Intelligence Agency,* 639 F.2d 1146 (5th Cir.1981)(federal district court is under a mandatory duty to dismiss suit over which it has no jurisdiction).

■ **2. No Waiver of Sovereign Immunity for Constitutional Claims.** There is an additional reason the court cannot consider plaintiff's claims under the Tort Claims Act. Constitutional torts are not within the scope of the Federal Tort Claims Act because Congress has not waived sovereign immunity with respect to constitutional violations. *See United States v. Timmons,* 672 F.2d 1373, 1380 (11th Cir.1982)(United States has not waived its sovereign immunity from liability for an award of damages arising from purported violations of constitutional rights by its agents). Thus, to the extent that plaintiff's complaint alleges constitutional claims against the United States or its agencies or employees, this court lacks jurisdiction to consider the claim.

■ **3. Administrative Claim Prerequisite.** Even if the plaintiff could properly allege a cause of action against the United States under the Federal Tort Claims Act, the court lacks jurisdiction to consider the claim because plaintiff failed to file an administrative claim pursuant to 28 U.S.C.

§ 2675 prior to instituting suit in the district court. It is well established that in the case of the Federal Tort Claims Act, the provisions of 28 U.S.C. § 2675 create a jurisdictional prerequisites to filing an action:

An action shall not be instituted upon a claim against the United States for money damages for injury, loss of property...unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency...

28 U.S.C. § 2675(a). "The filing of an administrative claim...is jurisdictional and cannot be waived." *Ivey v. United States,* 873 F.Supp. 663, 667 (N.D.Ga.1995)(citing *Lykins v. Pointer, Inc.,* 725 F.2d 645, 646 (11th Cir.1984)); *see also, Orlando Helicopter Airways v. United States,* 75 F.3d 622, 624 (11th Cir. 1996); *McNeil v. United States,* 508 U.S. 106, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993); *Suarez v. United States,* 22 F.3d 1064 (11th Cir.1994) (failure to assert a sum certain in administrative claim leaves the court without jurisdiction). *See also Jerves v. United States,* 966 F.2d 517, 519 (9th Cir.1992) (failure to file administrative claim operates as a jurisdictional bar); *United States v. $10,000.00 in United States Funds,* 863 F.Supp. 812, 816 (S.D.Ill.1994)(claimants contesting seizure of property would not be allowed to file late verified claim, though claimants filed answer and counterclaim asserting interest in property, where claimants had notice of seizure and did not file claim). Because plaintiff failed to comply with the administrative prerequisites, he cannot maintain his claim Federal Tort Claims Act.

## B. *Bivens* Cause of Action

■ Plaintiff alleges a *Bivens* cause of action against the defendants.[8] But a *Bivens* cause of action cannot be brought against a federal agency. *Federal Deposit Ins. Corp. v. Meyer,* 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)(the purpose of *Bivens* is to deter the officer). *Bivens* allows a plaintiff to seek money damages from government officials who have violated his Fourth Amendment rights. Nonetheless, government officials performing discretionary functions generally are granted qualified immunity and are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

■ The government asserts that Agent Gugliotta is entitled to qualified immunity because she violated no clearly established statutory or constitutional right. A court evaluating a claim of qualified immunity "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Conn v. Gabbert,* 526 U.S. 286, ——, 119 S.Ct. 1292, 1295, 143 L.Ed.2d 399 (1999). Plaintiff asserts that his constitutional rights were violated because Agent Gugliotta lacked probable cause to seize his funds and currency.

In order to overcome a federal law enforcement officer's qualified immunity, a plaintiff seeking damages for violation of constitutional rights must show that these rights were clearly established at the time of the conduct at issue. *Hunter v. Bryant,* 502 U.S. 224, 233, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). As the Eleventh Circuit stated:

unless a government agent's act is so obviously wrong, in light of preexisting

---

**8.** In *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Court implied a cause of action against federal agents who allegedly violated the United States Constitution. *Bivens* suits, however, are not authorized against federal agencies. *See FDIC v. Meyer,* 510 U.S. 471, 486, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). Consequently, plaintiff cannot assert a *Bivens* claim against the United Stated Drug Enforcement Administration.

law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit.

*Lassiter,* 28 F.3d at 1149. Decisions by the Supreme Court concerning qualified immunity reflect a purpose that its protection be broadly available "to all but the plainly incompetent or those who knowingly violate the law." *See Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Plaintiff has failed to meet his burden to allege a violation of a clearly established constitutional right.

 In this case, the government initiated an investigation of Albajon concerning cocaine trafficking. Previously, plaintiff had been convicted of conspiracy to possess cocaine and possession of cocaine. In June 1998, an undercover DEA agent met with Albajon and began negotiations for the purchase of three kilograms of cocaine. (Gugliotta Affid. at 2). Agent Gugliotta received information that Albajon would be trafficking two to three kilograms of cocaine from Miami to Maryland by air on June 27, 1999. She was told that an associate of Albajon, Marvin Ebanks, would drive Albajon to the Miami airport in a green Isuzu Rodeo, bearing licence number XXP–93U. (Gugliotta Affid. at 2). This information was confirmed when Agent Gugliotta saw the green Isuzu arrive at the airport. Under the circumstances, it was reasonable for Gugliotta to have a suspicion that criminal activity was afoot and that she was entitled to approach the plaintiff at the airport. *See Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *United States v. Puglisi,* 723 F.2d 779 (11th Cir.1984); *United States v. Jensen,* 689 F.2d 1361 (11th Cir. 1982).

The government then argues that several circumstances existed that gave Gugliotta probable cause to seize the money and travelers checks as drug-related. First,

plaintiff failed to account for the large amount of U.S. currency and travelers checks hidden on his person. To the contrary, he gave conflicting stories regarding the ownership of the money. Second, plaintiff had in his possession a number of drivers' licenses with various aliases. His ticket was in the alias of William Mendez. Third, the customs canine alerted on plaintiff's possessions. Gugliotta argues that under the circumstances, she had probable cause to seize the cash and checks. *See United States v. Sentovich,* 677 F.2d 834 (11th Cir.1982)(use of drug sniffing dog sufficient to establish probable cause); *United States v. $288,914 in United States Currency,* 722 F.Supp. 267, 269 (E.D.La. 1989) (it is clear that the discovery of large sums of money, without credible explanation, can provide the necessary circumstantial evidence that money is drug related). The court agrees that Gugliotta's act was not so obviously wrong, in light of existing law, to deprive her of qualified immunity. Defendant is entitled to summary judgment on this claim; plaintiff's motion for summary judgment based on lack of probable cause is denied.

## C. Claim for Violation of 42 U.S.C. § 1983 (civil rights).

 Plaintiff cannot maintain a claim under section 1983 because 42 U.S.C. § 1983 applies only to a violation of a federal or constitutional right while acting under color of state law. *See Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).[9] Section 1983 is inapplicable to actions taken under color of federal law. *See District of Columbia v. Carter,* 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Wyke v. Polk County School Bd.,* 129 F.3d 560, 568 (11th Cir.1997); *District of Columbia v. Carter,* 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613, *reh'g denied,*

---

**9.** As a federal agency, the United States Drug Enforcement Administration is not a proper party for suit under 42 U.S.C. § 1983, thus

defendant is entitled to summary judgment on the civil rights claims against the agency.

410 U.S. 959, 93 S.Ct. 1411, 35 L.Ed.2d 694 (1973)(because of the requirement in section 1983 that the action occur under color of state law, "actions of the Federal government and its officers are at least facially exempt from its proscriptions."); *Campbell v. Amax Coal Co.*, 610 F.2d 701, 702 (10th Cir.1979)("[Section] 1983 ... does not apply to federal officers acting under color of federal law").

■ In order to maintain a claim under section 1983, the plaintiff must establish that the individual defendant deprived him of a right secured by the Constitution or laws of the United States *and* that the deprivation was committed by a person acting under color of state law. *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992); *Hale v. Tallapoosa County*, 50 F.3d 1579 (11th Cir.1995). The mere participation of some state officers is insufficient to turn a federal law enforcement activity by federal officers into a state action sufficient to support a section 1983 claim. *See Askew v. Bloemker*, 548 F.2d 673, 678 (7th Cir.1976); *Ginter v. Stallcup*, 641 F.Supp. 939, 956 (E.D.Ark.1986), *modified on other grounds*, 869 F.2d 384 (8th Cir.1989)(section 1983 action did not lie against FBI agents who were carrying out their duties as federal law enforcement officers in attempting to capture federal fugitive even though the federal agents were acting pursuant to a state search warrant). Special Agent Gugliotta's authority arises solely from her status as a federal law enforcement officer as a Special Agent of the United States Drug Enforcement Administration. Any actions taken by Gugliotta in this matter arose under federal law. Consequently, the defendant is entitled to summary judgment on this claim because plaintiff cannot maintain a claim under section 1983.

**D. Claims under the Fourth, Sixth, and Fourteenth Amendments and any and all other existing statutory authority not specifically included therein.**

■ Plaintiff claims that the defendants violated his rights under the Fourth, Sixth, and Fourteenth Amendments. Plaintiff's constitutional claims appear to be grounded on alleged violations of his right to constitutional due process rights, that is, defendants violated his right to receive notice of the DEA's forfeiture of the currency. Albajon asserts that the defendants knew that he was in jail between June 30, 1998 through September 1, 1998. Yet the date of the letter giving notice of the forfeiture was August 24, 1998, consequently he was in jail and couldn't have received notice.

■ According to the government, plaintiff's allegation that DEA sent him notice while he was in custody is unsupported by the evidence. Although the notice letter was dated August 24, 1998, the envelope reflects that the letter was actually postmarked on September 9, 1998, and was forwarded on September 17, 1998. Consequently, plaintiff was no longer incarcerated at the time notice was sent. Even if Albajon did not receive actual notice, in order to satisfy constitutional due process requirements, actual notice is not required. Notice must merely be "reasonably calculated, under all the circumstances, to apprize interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *see also United States v. Derenak*, 27 F.Supp.2d 1300, 1305 (M.D.Fla.1998)("it is also settled that the *Mullane* standard applies to notice given pursuant to administrative forfeiture proceedings."). In this case, the DEA sent notice to plaintiff's home address, as well as other addresses listed on plaintiff's various identification cards. In light of the numerous attempts to serve notice on the plaintiff, as outlined above, the court is satisfied that constitutional notice requirements were met. *See Derenak* 27 F.Supp.2d at 1305 (DEA's attempts to provide defendant with written notice of forfeiture proceeding satisfied notice requirements); *Coggins v. United States*, 860

F.Supp. 845 (M.D.Ga.1994). Additionally, insofar as plaintiff alleges a violation under the Fourteenth Amendment, the government is entitled to summary judgment on that claim because the Fourteenth Amendment applies only to states and state action. *District of Columbia v. Carter*, 409 U.S. 418, 424, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973).

### E. Common–Law Tort Claims.

■ Albajon's common-law tort claims are inapplicable in suits against federal agencies and federal employees. The Federal Tort Claims Act is the exclusive remedy for suits against a federal agency or federal employee acting in his official capacity. The Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly referred to as the Westfall Act, establishes that when a federal official is acting within the scope of his employment, he is immune from suit for common law torts. *See* 28 U.S.C. § 2679(b). A federal employee is not liable for common-law tort claims even if an exclusion under the Federal Tort Claims Act would bar liability from suit. *United States v. Smith*, 499 U.S. 160, 111 S.Ct. 1180, 113 L.Ed.2d 134 (1991).

### F. Claim Under Federal Rule of Criminal Procedure Rule 41(e).

■ Plaintiff has filed a motion for return of property pursuant to Fed. R.Crim.P. 41(e).[10] Rule 41(e) does not apply in this case because there is no criminal case. "Rule 41(e) applies only to criminal proceedings and is expressly inapplicable to forfeiture of property in violation of a statute of the United States." *In re $67,470.00*, 901 F.2d 1540, 1544 n. 4 (11th Cir.1990); *See also United States v.*

*Castro*, 883 F.2d 1018, 1019–20 (11th Cir. 1989) ("It is well-settled that the proper method for recovery of property which has been subject to civil forfeiture is not the filing of a Rule 41(e) Motion, but filing of a claim in the civil forfeiture action").

Moreover, the plaintiff failed to perfect his claim. After notification of seizure, an interested claimant may exercise several options with respect to the seizure of property. A claimant may do nothing, in which the seized property is administratively forfeited to the United States. A claimant may file a petition with the agency for remission or mitigation of the forfeiture within 30 days of the notice of seizure. 19 U.S.C. § 1618; 21 C.F.R. § 1316.80; 19 C.F.R. § 171.12. Or a claimant may litigate the forfeiture in federal district court if he posts a claim and cost bond within 20 days from the date of the first publication of the notice of seizure. 19 U.S.C. § 1608; 21 C.F.R. § 1316.71–81; *In re $67,470.00*, 901 F.2d 1540, 1545 (11th Cir.1990), *Nnadi v. Richter*, 976 F.2d 682, 689 (11th Cir.1992). By failing to file the claim and cost bond within 20 days of the first date of publication of the notice of seizure, plaintiff failed to perfect his right to contest the forfeiture of the seized property in a judicial forum.

If no bond is posted within the 20 day period, and an administrative petition is not timely filed, the property is declared forfeit by the seizing agency. In this case, the DEA complied with the publication requirement. Albajon was also provided with a notice of seizure by certified mail at several addresses as evidenced by execution of the certified mail return receipt cards. But because the plaintiff did not

---

**10.** Subsection (e) to Federal Rule of Criminal Procedure 41 provides as follows:

Motion for Return of Property. A person aggrieved by an unlawful search and seizure or by the deprivation of property may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property. The court shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted, the property shall be returned to the movant, although reasonable conditions may be imposed to protect access and use of the property in subsequent proceedings. If a motion for return of property is made or comes on for hearing in the district of trial after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12.

timely file a claim and cost bond with the DEA concerning the currency, the DEA administratively forfeited the currency. With respect to Albajon's claim for the traveler's checks, the DEA sent him a letter on December 2, 1998 advising him that the claim was defective because it was received without a bond or affidavit of indigency. Although the DEA provided him an additional 20 days to cure any deficiencies, as well as providing him with a form affidavit to proceed in forma pauperis in lieu of cost bond, the plaintiff failed to perfect any deficiency and never submitted a cost bond or request for waiver to DEA. To contest the merits of this forfeiture in district court, Albajon was required to file a claim and cost bond in accordance with the provisions of 19 U.S.C. § 1608. *In re $67,470.00*, 901 F.2d 1540, 1545 (11th Cir.1990).

■■■■■ Plaintiff asks this court to invoke its equitable jurisdiction, but the facts in this case do not warrant exercise of the court's equitable jurisdiction. Generally administrative forfeiture actions are not reviewable by federal courts. *See In re $67,470.00*, 901 F.2d 1540, 1544 (11th Cir. 1990). In this circuit, the court's equitable jurisdiction may be invoked, but only "in exceptional cases where equity demands intervention." *Id.* at 1544 (noting that generally federal courts lack jurisdiction to review DEA forfeiture decisions). In deciding whether to exercise equitable jurisdiction, the court should consider four factors: (1) whether the property was seized in callous disregard of petitioner's constitutional rights; (2) whether the petitioner has an individual interest in and need for the property; (3) whether the petitioner would be irreparably injured by denial; and (4) whether the petitioner has an adequate remedy at law. *Id.* at 1545; *Richey v. Smith*, 515 F.2d 1239, 1243 (5th Cir. 1975).

■■■■ None of the facts in this case weigh in favor of this court's exercise of jurisdiction. First, plaintiff's constitutional rights were not jeopardized. The currency and travelers checks were seized for forfeiture pursuant to 21 U.S.C. § 881. Plaintiff was afforded ample due process as explained above. He was also given a choice to request relief from the administrative forfeiture by requesting a remission or mitigation of forfeiture *or* to request judicial forfeiture proceedings by filing a claim and cost bond, or a request for a waiver. Plaintiff failed to comply with the statutory requirements to ensure a judicial forum. Plaintiff cannot now seek judicial review of the merits of the administrative forfeiture decision when he chose to disregard his administrative remedy. *Scarabin*, 919 F.2d 337, 338 (5th Cir.1990), citing *United States v. One 1970 Buick Riviera Bearing Serial No. 494870H910774*, 463 F.2d 1168, 1170 (5th Cir.)(Attorney General has unreviewable discretion over remission or mitigation of forfeitures). *See In re $67,470.00*, 901 F.2d at 1543–44; *One 1970 Buick Riviera*, 463 F.2d at 1170 (judicial review of remission and mitigation function is exercised only when officials refuse to entertain a mitigation claim on the erroneous belief that they have no statutory authority to do so; extent of such judicial control is merely to require officials to exercise jurisdiction over the claim, not to review the official decision of the merits).

Moreover, there is no irreparable harm to the plaintiff occasioned by the loss of the currency and travelers checks because this loss can be compensated by money damages. *See Northeastern Florida Chapter of Ass'n of Gen. Contractors v. Jacksonville*, 896 F.2d 1283, 1285 (11th Cir.1990). *See also United States v. Watkins*, 120 F.3d 254, 255 (11th Cir.1997) ("Equitable jurisdiction to review a forfeiture is extremely limited and does not lie where the claimant has an adequate remedy at law"); *In re One 1983 Mercedes Benz Automobile*, 131 F.R.D. 199, 200–01 (M.D.Ala.1989) (court would not exercise equitable jurisdiction over request for return of car declared forfeited where claimant failed to contest forfeiture in administrative proceedings and did not claim that government acted in bad faith or contrib-

uted to failure to exercise legal remedy). For these reasons, the court declines to exercise equitable jurisdiction over this matter.

### G. 28 U.S.C. § 2412(d)(1)(A) (Equal Access to Justice Act)

The plaintiff seeks attorney's fees under under 28 U.S.C. § 2412(d)(1)(A) (Equal Access to Justice Act). The court finds that the position of the United States was substantially justified and therefore an award of attorney's fees under the Equal Access to Justice Act is not appropriate.

### III. CONCLUSION

For the reasons stated above, the government's motion for summary judgment is granted; plaintiff's motion for summary judgment is denied.